(No. 6617.   July 10, 1939.)

MRS. MAMIE RAND, Mother of WILLIAM PETER MITCHELL, Appellant, v. LAFFERTY TRANSPORTATION CO., Employer, and STATE INSURANCE FUND, Surety, Respondents and Cross-appellants.

[92 Pac. (2d) 786.]

J. Ward Arney, for Appellant.

Clarence L. Hillman, for Respondents and Cross-appellants.

HOLDEN, J.—Claimant Mamie Rand was the mother of William Peter Mitchell. She and her husband had been divorced about 18 years prior to the hearing of this cause. In 1923, claimant married Rand. In March, 1937, Rand and claimant separated. On or about September 20, 1937, the son went to work for respondent, Lafferty Transportation Co., as a laborer on one of its tug boats. On or about October 6, 1937, while loading wood on a boat, a splinter was thrust into Mitchell's right hand between the thumb and index finger. The injury resulted in an abscess which made medical treatment necessary. He was treated by a Dr. Barclay, commencing November 4, 1937. Young Mitchell died December 14, 1937. December 22, 1937, his mother filed a claim for compensation based on her dependency on her son. April 1, 1938, claimant resumed "relationship with Mr. Rand." Application was made and filed for a hearing of the claim June 20, 1938. June 28, 1938, the state of Idaho on the

relation of Harry C. Parsons, then state auditor, filed a claim under subdivision 6, section 43–1101, I. C. A., as amended by chapter 147, Session Laws 1935.

The cause was tried at Coeur d'Alene, July 9, 1938. July 21, 1938, findings of fact and conclusions of law were made and filed and the following award entered:

"WHEREFORE, IT IS ORDERED, AND THIS DOES ORDER, That the claimant, Mamie Rand, be, and she hereby is, awarded against the defendants, Lafferty Transportation Company, employer, and State Insurance Fund, surety, and each of them, weekly compensation at the rate of $7.60 from and after the 14th day of December, 1937 to the first day of April, 1938, and thereafter during the continuation of a condition of actually wholly dependency but not to exceed a period of 400 weeks from and after the 4th day of November, 1937, and for the additional sum of $190 expended for burial expenses."

August 2, 1938, claimant filed notice of appeal to this court from that part of the above-quoted award granting compensation "from and after the 14th day of Dec., 1937, to the first day of April, 1938, and thereafter during the continuation of a condition of actually wholly dependency." August 15, 1938, the Lafferty Transportation Co., employer, and the State Insurance Fund, surety, cross-appealed. No appeal was prosecuted in behalf of the state of Idaho.

Claimant contends the board erred:

"1. In commencing compensation on the date of the death, Dec. 14, 1937, instead of from Nov. 4, 1937, when deceased had to quit work by reason of accidental injury.

2. In limiting future compensation to a condition of actual *wholly* dependency, instead of wholly or *partially* dependent. (Sec. 43–1102.) (No partial dependency shown.)

3. In injecting into the award the limitation, 'and thereafter during the continuation of a condition of actual wholly dependency.' "

One whose employment brings him within the scope and benefits of the Workmen's Compensation Law is entitled to compensation for loss of earning capacity due to injury by accident arising out of and in the course of his employment. And one who is dependent upon such em-

ployee, at the time of the accident, as provided by statute, if the employee dies as a result of the accident, is entitled to compensation for loss of support due to the death, but is not entitled to compensation for loss of earning capacity of the employee during his lifetime. (Secs. 43–1001, 43–1003, 43–1101, 43–1102, 43–1106, 43–1110, 43–1112, and 43–1113, I. C. A.)

It will be noted the award is based upon total dependency and makes no provision for partial dependency. As will hereinafter appear, the evidence shows claimant was wholly dependent on her son at the time of the accident. And as will further appear there is an entire lack of evidence of partial dependency. Section 43–1101, *supra*, fixes the amount of compensation to be paid to a dependent mother of a deceased employee at 25 per cent of his weekly wages where she has been wholly dependent upon him, and a proportionate amount, in the discretion of the board, where partially dependent. Section 43–1102, *supra*, requires dependency must exist at the time of the accident. Section 43–1103, *supra*, provides compensation shall be paid "during dependency as hereinbefore defined but in no case to exceed 400 weeks." In the absence of evidence of partial dependency the board could not fix the amount of compensation therefor.

On the cross-appeal, cross-appellants challenge the sufficiency of the evidence to sustain the finding and conclusion the infection from the wound, caused by the sliver entering the hand of the deceased, resulted in the disease which caused his death. Dr. Barclay, who began treating Mitchell November 4, 1937, testified "the wound cleared up nicely and progressed all right and was practically well on the 9th of Nov." He further testified he was called November 12th, to see the patient at his home at which time the patient was suffering severe pains in his back; that on being asked if he had been having any trouble since the doctor last saw him, the deceased mentioned having had a slight attack of sore throat which lasted about half an hour. Dr. Barclay further testified he saw Mitchell again November 13th, and that he felt better; that he did not see him after that until the 17th of November when he directed that the patient be

taken to the hospital. He was suffering severely from pains in his back. November 20th, deceased became paralyzed from the waist down and died December 14th, following. Dr. Barclay diagnosed the disease from which Mitchell died to be transverse myelitis, and testified, in his opinion, it was caused by infection produced by the splinter wound in the hand.

Cross-appellants further challenge the sufficiency of the evidence to support the finding of the board to the effect the claimant was actually, wholly dependent upon deceased for support ''for the reason that the evidence is wholly insufficient to warrant such findings, particularly for the reason that the evidence conclusively shows that the appellant was not divorced from her husband, Mr. Rand, and there is no competent evidence in the record to show that the said husband had failed, refused, or neglected to support appellant.''

On the question of her dependency on the deceased, claimant testified:

''Q. From that time on (the date of the separation) who supported you?

''A. My son, William Mitchell.

''Q. During that time until his death what happened to Bill's checks as they came in?

''A. He just gave them to me.

''Q. Did you at any time go and get them for him or did he bring them home to you?

''A. He would bring them home and when he worked for Lafferty's I just got them from the Lafferty Transportation Co.

''Q. What did you do with those checks?

''A. I paid the grocery bill and light bill and the hospital bill for my operation.

''Q. Where was he living during that time?

''A. With me.

''Q. How much of that money did Bill spend personally, on his own pleasure?

''A. Very little.

''Q. How much a month would it average?

"A. Oh, maybe ten dollars.

"Q. Were you during that period of time, from about March 1937 down to the death of William Mitchell, doing any work of any kind.

"A. No, I wasn't able to do any.

"Q. Do you have any income of any kind except from Bill?

"A. No.

"Q. Have you since been able to work or derive any income?

"A. No.

"Q. Are you in a physical condition to work?

"A. No.

"Q. When did you resume relationship with Mr. Rand?

"A. The first of April (1938).

"Q. This year?

"A. Yes.

"Q. Have you any expectation as to how long that will last? (Mr. Zapp: I object to that as immaterial and self-serving. Mr. Arney: It is not at all self-serving. Mr. Zapp: It is speculative.)

" . . . .

"Q. Tell me this. Did you resume relationship with Mr. Rand from choice or necessity?

"A. I had to take him back because I wasn't able to work.

"Q. Have you any idea how long that relationship will last? (Mr. Zapp: Same objection as before. Mr. Suppiger: What is the difference between your question now and before: Is the relationship continuing now?)

"A. We are living together but I don't know for how long."

Upon the foregoing, uncontradicted testimony the board properly found, as a fact:

"That in March 1937, decedent lived with claimant and supported her, and from that time on until the death of decedent, claimant was actually, wholly dependent on him for support."

Cross-appellants do not, by specification of error, challenge the board's conclusion of law that claimant was en-

titled to an award of compensation based upon "actual wholly dependency," and we do not deem it proper to do so for cross-appellants. Therefore, no question of law is presented as to what effect, if any, the resumption of the marriage relation between Mrs. Rand and her husband has on her claim for compensation based on dependency on her son. Cross-appellants confine their attack to the sufficiency of the evidence to support the board's finding of fact of total dependency and take "the position that the appellant has not sustained the burden of proof by establishing:

"First, that the transverse myelitis from which the decedent died was the result of the injury sustained by decedent in October, 1937;

"Second, that appellant was actually dependent, wholly or partially, upon the decedent at the time of the accident or at any other time."

The burden was upon claimant, as contended by cross-appellants, to prove "that the transverse myelitis from which the decedent died, was the result of the injury sustained by decedent in Oct. 1937," but in the case at bar there was a substantial conflict in the medical testimony as to whether the disease from which Mitchell died was transverse myelitis or acute poliomyelitis. Where there is a substantial conflict in the evidence, the findings of the Industrial Accident Board will not be disturbed. (Const., art. 5, sec. 9, as amended, Sess. Laws, 1935, p. 377; *Golay v. Stoddard et al., ante,* p. 168, 89 Pac. (2d) 1002.) That claimant was actually, wholly dependent upon the deceased, at the time of the accident, was established by uncontradicted testimony, as above pointed out.

We conclude the award of the board must be affirmed, and it is so ordered. No costs awarded.

Budge, J., and Givens, J., concur.

Ailshie, C. J., did not sit at the hearing or participate in the decision.

Morgan, J., by reason of illness, did not participate in the decision.