341 P.2d 447

Christina K. MOELLER, widow, Individually and natural guardian of Albert E., Kenneth G. and Melvin D. Moeller, minors, Claimant-Appellant, Edgar Christian Moeller, Deceased,

v.

VOLCO BUILDERS' SUPPLY, INC., Employer, and Industrial Indemnity Company, Surety, Defendants-Respondents.

No. 8738.

Supreme Court of Idaho.

July 1, 1959.

Coughlan, Imhoff & Shepard, Boise, Richard H. Seeley, Jerome, for appellant.

Richards, Haga & Eberle, Boise, for respondent.

KNUDSON, Justice.

Edgar Moeller, now deceased, was survived by his widow and three minor children. For a period of approximately fifteen months prior to March 1957 Mr. Moeller had been employed by respondent Volco Builders' Supply, Inc. as a carpenter. During a period of approximately six weeks prior to January 1957 he occasionally did insulating work for his employer. The insulation material used was rock-wool, also referred to as fiberglass, and it is blown into a building through a hose. During the process of insulating a building Mr. Moeller, wearing a mask, would be in the attic directing the placement of the insulating material. As a result of his contact with the insulation material, he developed a skin infection on his hands which progressed to running sores and spread to his groin. On January 21, 1957 he consulted Dr. James E. Sloat who diagnosed the infection as contact dermatitis or erysipelas and fixed the date of the onset at "approximately January 18, 1957". Dr. Sloat prescribed treatment and although Mr. Moeller continued to work he no longer handled insulating material, and by March 29, 1957 the infection had substantially, if not entirely, disappeared. On March 30, 1957 Mr. Moeller again consulted Dr. Sloat relative to numbness in his foot and he also mentioned a back injury which he sustained the day before while removing some forms from around cement staging. Although he complained of pain and mentioned the incident to some co-workers he told Dr. Sloat on March 30, 1957 that his principal concern was "numbness in his foot". While under observation and treatment by Dr. Sloat he gradually developed a numbness and progressive paralysis of both feet. Dr. Sloat referred him to Dr. Edward J. Kiefer of Boise a specialist in neurological diseases who could find no objective findings to substantiate Mr. Moeller's subjective complaints. The paralysis progressed with increased severity and Dr. Sloat on April 23, 1957 referred him to Dr. Stewart A. Wright a specialist in neurology and neurological surgery of Salt Lake City, by whom he was examined and treated until his death on May 15, 1957. Dr. Wright who executed the death certificate diagnosed decedent's illness and cause of death as ascending myelitis. An autopsy was performed by Dr. S. A. Swift a pathologist at St. Mark's hospital in Salt Lake City.

On February 15, 1957 Mr. Moeller filed with the Industrial Accident Board a claim for compensation alleging that

"over a period of time the insulation with which claimant was working, worked into his skin, causing sores for which he had to have medical care".

On April 22, 1957 Mr. Moeller caused to be filed with the Industrial Accident Board

352

a claim for compensation alleging an accident occurred during his employment on March 29, 1957 with resulting disability beginning April 11, 1957 and described the accident as

"he [claimant] was lifting some forms when he felt a pinch or sting between his shoulders. The next day he began to have trouble with his legs and is now paralyzed from the waist down".

On December 20, 1957 a claim for death benefits and a petition for hearing was filed by appellant. In the said petition for hearing it is alleged that

"Edgar Moeller received a personal injury and occupational disease caused by an accident arising out of and in the course of his employment * * * and that death did result from said injury and occupational disease * * *".

Following an extended hearing the Industrial Accident Board entered its order on October 9, 1958 denying benefits from which order this appeal is taken.

Appellant's assignments of error, four in number, claim error by the Industrial Accident Board in failing to find that the erysipelas which decedent contracted and the back injury which he suffered, during and in the course of his employment, were related to his death. There is no material conflict in the evidence other than in the opinion evidence of the physicians who testified as medical experts. The essential issue relates to the cause of Mr. Moeller's death. Appellant contends that the contributory causes of Mr. Moeller's death were an occupational disease contracted, and an accidental back injury sustained, by decedent in the course of his employment by the employer respondent. The respondents contend that Moeller's death was due to disease unrelated to his employment.

Dr. Sloat whom deceased consulted concerning his skin infection testified that such infection cleared up prior to the last of March 1957. Although appellant places some importance, as concerns the cause of death, on the back injury sustained by deceased on the 29th of March, 1957, the testimony of Dr. Sloat whom he consulted on March 30, 1957 indicates that the back injury was relatively unimportant compared with his other complaint. In this connection Dr. Sloat testified as follows:

"Q. As I understand it, subsequently in March 1957 the patient consulted you on account of trauma or injury to the back? A. Well his complaint was numbness in his foot but he mentioned that he had had trauma prior to that, yes."

*    *    *    *    *    *

"Q. I believe you stated in answer to a question of counsel that when he came to you at the end of March you said his main complaint was that of

numbness and he mentioned the trauma? A. Yes.

"Q. He did not come in to see you in regard to the trauma—do I gather from that? A. That is in March?

"Q. Yes. A. No he came in to see me in regard to the numbness.

"Q. Were you able, Dr. Sloat, to demonstrate any objective findings as to a possible trauma to the upper spine that he mentioned? A. No, not objectively."

As to the cause of death Dr. Sloat testified as follows:

"Dr. Sloat, based upon your examination of Mr. Moeller, and to whatever extent you desire to use the pathological report and the report of the specialists, do you have an opinion as to the cause of the death of Mr. Moeller? A. Yes.

"Q. Would you give that, please? A. Based on those things which you have mentioned it is my opinion that he died from virus type infection grouped collectively as Landry's ascending myelitis."

Dr. Edward J. Kiefer, a specialist to whom decedent was referred by Dr. Sloat, made fluoroscopic and radiographic studies following a myelgram of the patient's lumbar spinal canal and reported that he was unable to make objective findings to support the patient's complaints. Dr. Kiefer's report recites that the patient did state "that he felt that he had injured his back on March 29th but also stated that his back did not become painful at the time nor has he had any pain as a result of the injury".

Dr. Joseph A. Beeman, a pathologist gave opinion testimony on behalf of appellant predicated upon a hypothetical question. He was asked if in his opinion "there is a causal connection between the infection—erysipelas which Mr. Moeller suffered and his subsequent death?", to which the doctor replied:

"It is my opinion that Mr. Moeller's death, which, parenthetically, the autopsy showed to be due to Landry's paralysis, or an ascending paralysis, is very probably, from a reasonable medical certainty was set off by the skin infection or erysipelas that he suffered sometime early in 1957."

Dr. Beeman emphasized by his further testimony that in his opinion the disease of which Mr. Moeller died, ascending myelitis, did not come from the erysipelas but that it was initiated or set off by that infection.

Dr. Roscoe Ward, a general practitioner, also testified in response to a hypothetical question and was asked if in his opinion "there is a causal connection between the infection which Mr. Moeller suffered, his back injury, and his subsequent death".

The doctor did not ascribe any connection between the "back injury" and the death but he did say that in his opinion there was a causal connection between the infection which Mr. Moeller suffered and his subsequent death. Dr. Ward had not had occasion, in his practice, to treat any case of ascending myelitis, but he had read extensively of medical literature on the subject. It should be noted that the hypothetical questions which were submitted to both Dr. Beeman and Dr. Ward did not contain any information as to when, if ever, Mr. Moeller's skin infection cleared up, whereas Dr. Sloat who treated the decedent for the infection testified that it cleared up prior to decedent's back injury. The evidence is convincing that the erysipelas did not recur on Mr. Moeller's skin after March 29, 1957.

Dr. Stewart A. Wright, a specialist in neurology and neurological surgery, diagnosed decedent's ailment and from April 23, 1957 to the date of his death on May 15, 1957 prescribed for him. Dr. Wright, whose testimony is quite lengthy and detailed, in response to an inquiry as to whether, in his opinion, there was a causal relationship between the erysipelas or the back injury suffered by the decedent and the disease which caused his death, stated:

"A. According to the history as furnished to me by Dr. Sloat and by the man's family, by my own findings, by all of the hospital studies that were made and by the autopsy which was done, and the reports on the autopsy findings, I based my opinion on all of those things, that there was no causal relationship between the injury of the spine, up between the shoulders and the erysipelas of the skin. I repeat, I can see no causal relationship between those things, and the ascending type of virus myelitis which caused this patient's disease and final passing away."

The autopsy on the body of deceased was performed the day following his death by Doctors S. A. Swift and R. L. Marsh and their reported findings support the conclusion reached by Dr. Wright.

Throughout all the expert testimony many inquiries and expressions are directed to the possibility or probability of a bacterial type of infection such as erysipelas becoming the causative agent of ascending myelitis which, in the opinion of some text writers and experts offered in evidence, is due to a virus.

The issue between the parties involves the causal relationship, if any, of decedent's skin malady and his back injury to the cause of his death. The answer must be found through evidence submitted by medical experts. From the evidence submitted in this matter it is convincing that the cause of ascending myelitis has not been determined to a medical certainty. Obvi-

ously there is, even to the medical profession, a bewildering array of possible causes, but the causative agent or agents have not as yet been definitely determined.

The experts who testified in this matter are in disagreement upon the issue involved. There is a substantial conflict in the evidence and this Court has repeatedly held that in such a case the findings of the Industrial Accident Board will not be disturbed. Golay v. Stoddard, 60 Idaho 168, 89 P.2d 1002; Rand v. Lafferty Transportation Co., 60 Idaho 507, 92 P.2d 786; Miller v. Bingham County, 79 Idaho 87, 310 P.2d 1089. Notwithstanding the conflict in the opinions of the medical experts the evidence is such that we cannot say that the findings of the Board are not supported by substantial, competent evidence. This Court may not therefore disturb the Board's findings. Idaho Constitution, Art. 5, § 9; §§ 72–608 and 72–609, I.C.; Smith v. Potlatch Forests, Inc., 74 Idaho 470, 264 P.2d 684; Warlick v. Driscoll, 68 Idaho 552, 200 P.2d 1014; Walker v. Hogue, 67 Idaho 484, 185 P.2d 708; Miller v. Bingham County, supra.

For the reasons herein stated the order denying death benefits is affirmed.

TAYLOR, SMITH and McQUADE, JJ., and MARTIN, District Judge, concur.

PORTER, C. J., not participating.