499 P.2d 560

**Lois HADDEN, Claimant-Respondent,**

**v.**

**A & P TEA COMPANY, and Aetna Casualty & Surety Company, Defendants-Appellants.**

**No. 10974.**

Supreme Court of Idaho.

March 27, 1972.

862

Coughlan, Imhoff, Christensen & Lynch, Boise, for defendants-appellants.

E. Lee Schlender, Ketchum, for claimant-respondent.

SHEPARD, Justice.

Claimant Hadden herein petitioned the Industrial Accident Board to modify a previously entered compensation agreement on the ground of changed conditions. The Board awarded additional compensation, and the employer and its surety appealed from that order of the Industrial Accident Board.

Claimant Hadden had been employed as a seasonal worker by appellant A & P Tea Company. During the month of January, 1970, in the course of her employment claimant bumped her left elbow, from which she suffered some pain and swelling. During March of the same year she bumped her right elbow and thereafter experienced similar symptoms.

All requirements of notice to the employer were met and thereafter claimant was examined over a number of months by numerous doctors. These examinations culminated in a panel examination by six additional doctors. None of the doctors who examined claimant during these months were able to determine any objective basis for her complaints. Those doctors included, among others, specialists in the fields of internal medicine, psychiatry, neurology and orthopedic surgery. Their tentative diagnoses varied from mild traumatic neurosis and mild traumatic neuritis or bursitis to anxiety reaction or psychosomatic problems. Since claimant had been seen by numerous physicians without any objective findings on their part, the chairman of the examining panel summarized the findings as being essentially negative and suggested that the case be settled with a rating of 5% of loss of one arm at the shoulder.

Claimant and defendants thereafter entered into an agreement which was approved by the Industrial Accident Board. That agreement provided for payment to the claimant for the suggested partial permanent disability and, for a short period,

of total temporary disability. The amounts stated therein were paid to the claimant and the defendants paid all medical expenses to that date. Thereafter, during November, 1970, claimant was examined at the University of Utah medical center and was diagnosed as suffering from a disease known as dermatomyositis. In March of 1971 claimant filed a petition to modify the compensation agreement on the ground that her condition had changed resulting in an increase of her disability. She asserted that she was then permanently and totally disabled from performing any work. A hearing upon that petition was held before the Industrial Accident Board. The Board thereafter modified the compensation agreement previously entered into by the parties and awarded claimant additional compensation on the basis that she was totally and permanently disabled for any work.

The defendants have appealed from that order of the Industrial Accident Board and their principal assignment of error suggests that the Board failed to require the claimant to prove that her condition had changed and that there was a causal relationship between the industrial accident and the alleged change in condition. Defendants further assert that the record is devoid of any evidence sustaining claimant's burden of proof and that the evidence is in fact to the contrary, particularly as to the necessary existence of the causal relation between the industrial accident and the change of condition. Defendants point to the Board's "ultimate findings of fact and conclusions of law" which in part stated: "This agreement and award [previously entered into between claimant and defendant] compensating for any and all complaints is res judicata as to all issues which were raised or could have been raised by defendants as defenses to claimant's claim for compensation resulting from said accident injury." Defendants point out that the Board's conclusion regarding res judicata effectively relieved claimant from the necessity of showing a causal relationship between

claimant's changed condition and the original industrial accident and was error.

Claimant, on the other hand, argues that Blackburn v. Olson, 69 Idaho 428, 207 P.2d 1160 (1949), requires the Board's res judicata ruling in the case at bar be upheld. Blackburn, and numerous earlier cases cited therein, indicate that the doctrine of res judicata applies to all questions which might have been raised as well to all questions which were raised in the original agreement and award. In Blackburn, however, the Board and the court were dealing with a claimant who had entered into an agreement and thereafter applied for modification on the ground of change in condition. At that point the employer attempted to interject a defense that at the time of the original accident the claimant was engaged in agricultural pursuit which was not covered employment. The Board and court in Blackburn correctly held that the original award and agreement were res judicata as to the question of whether or not the employment was covered.

Such is not the case herein, and we find no authority to uphold the position of the claimant and the Board that the previous agreement and award should be considered res judicata on the question of whether or not there was and is a causal relationship between the original industrial accident and claimant's alleged change of condition.

We deem the law of Idaho to be clear that "the burden is on the party claiming 'a change of condition' to prove the change, and that such change was due to and resulted from the prior compensable accident." Howard v. Washington Water Power Co., 65 Idaho 339, 342, 144 P.2d 210, 211 (1943). See also: Fackenthall v. Eggers Pole & Supply Company, 62 Idaho 46, 108 P.2d 300 (1940); Mell v. Larson, 54 Idaho 754, 36 P.2d 250 (1934).

We note that the court in Mell v. Larson, supra, stated:

"Hearings on the question of a change in condition is authorized under section 43–1407, I.C.A., for the purpose of allowing the board to make an award end-

ing, diminishing, or increasing compensation previously agreed upon or awarded. Such an award under that section of the statute is made entirely on a change in conditions occurring after the date of the previous award, *and which change in condition, if for the worse, is directly related to the injury resulting from the accident upon which the first award was based.* The board and the courts then are restricted to a consideration only of a condition arising after the former award." (Emphasis added) 54 Idaho 754, 763, 36 P.2d 250, 253.

*See also:* Craig v. De Berge, 67 Ariz. 168, 193 P.2d 442 (1948); Tinsley v. Goldenstern and Stolpher, 353 P.2d 6 (Okl. 1960).

It is sufficient to state that the evidence in this case by a medical expert, appearing by deposition on behalf of claimant, was that whether or not the trauma of the industrial accident produced the then present condition of the claimant *could not* be resolved. It appears that the cause of the disease is unknown, and if injury should precede the disease it could be purely coincidental. The doctor stated that the particular disease of dermatomyositis is a disease of unknown etiology and that there is no medical literature stating muscle injury or trauma is related to the disease. He stated specifically that anything he might say regarding any relationship between the disease and trauma would be strictly speculative.

Thus it is clear that claimant did not sustain the burden of proof that her changed condition had a causal relationship to the original industrial accident. This court has repeatedly, and most recently in Johnson v. Boise Cascade Corporation, 93 Idaho 107, 456 P.2d 751 (1969), held that findings as to the cause, extent and origin of a disability must be supported by at least some professional proof. In the case of Moeller v. Volco Builders' Supply, Inc., 81 Idaho 349, 341 P.2d 447 (1959), conflicting medical testimony was offered before the Industrial Accident Board as to

the causative agent of ascending myelitis, which had resulted in the death of claimant's deceased husband. The court therein said:

"Throughout all the expert testimony many inquiries and expressions are directed to the possibility or probability of a bacterial type of infection such as erysipelas becoming the causative agent of ascending myelitis which, in the opinion of some text writers and experts offered in evidence, is due to a virus.

"The issue between the parties involves the causal relationship, if any, of decedent's skin malady and his back injury to the cause of his death. The answer must be found through evidence submitted by medical experts. From the evidence submitted in this matter, it is convincing that the cause of ascending myelitis has not been determined to a medical certainty. Obviously there is, even to the medical profession, a bewildering array of possible causes, but the causative agent or agents have not as yet been definitely determined." 81 Idaho 349, 354, 341 P.2d 447, 450.

Having determined that claimant did not sustain her burden of proving a causal relationship between her changed condition and the original industrial accident, there was no evidence before the Industrial Accident Board upon which to base a modification of the original compensation agreement and award. Further, there was no evidence to support the Board's finding that the claimant was afflicted with the disease at the time she entered into the compensation agreement. The order of the Industrial Accident Board modifying the original compensation agreement and award, being without support therefor, must be and is reversed. The matter is remanded to the Board with instructions to enter its order denying claimant's petition for modification.

Costs to appellant.

McQUADE, C. J., and DONALDSON, J., concur.

McFADDEN, Justice (dissenting).

I am of the opinion that the award of the Industrial Accident Board should be affirmed. The reasons for this conclusion are set out below.

In this proceeding the claimant had been employed as a seasonal worker by the Great Atlantic and Pacific Tea Company at its potato processing plant at Burley, Idaho. While so employed claimant suffered a personal injury caused by an accident arising out of and in the course of her employment when she bumped her left elbow on some machinery while performing her job, following which injury she timely filed a notice of injury and claim for compensation. Subsequent to that injury, claimant sustained another injury when she bumped her right elbow in the course of her employment. Following these injuries the claimant experienced considerable pain and swelling in both of her upper extremities. She consulted numerous physicians, none of whom could determine the specific cause of her complaints. She was later examined by a panel of physicians in Boise, and again these physicians on the panel could find no specific cause of the claimant's symptoms. However, the panel suggested that the case be settled with a rating of 5% loss of one arm at the shoulder.

Following this report the claimant and her employer and its surety entered into a compensation agreement which was submitted to the Industrial Accident Board and by it approved on August 20, 1970. This agreement provided for the payment to the claimant for permanent partial disability arising from her accident of 5% compared to the loss of an arm at the shoulder. The surety then made the payments in accordance with this award of both medical expenses and compensation.

Following approval of the compensation agreement by the Board in August, 1970, claimant returned to work, but was unable to perform her work steadily as she continued to have considerable pain, swelling and discomfort in her arms. The Board specifically found:

"* * * These symptoms were the same symptoms which she had previously experienced but during the period following her return to work they increased in severity to the point that she had constant pain in her arms and shoulders. The claimant ceased working the first of October, 1970, due to this condition and she has not worked since."

After leaving her employment, claimant consulted with her attending physician, who was unable to find a basis for her complaints, and who then referred claimant to the University of Utah Medical Center at Salt Lake City. She was hospitalized there and examined by another physician, Dr. Ward, who, following certain tests, diagnosed the claimant's condition. It was this physician's opinion that claimant was suffering from a condition known as dermatomyositis. In its findings the Board stated:

"Dr. Ward also testified that the cause or etiology of this disease is unknown and that the relationship, if any, of the disease to the trauma experienced by the claimant was unknown. He could not draw any connection between the claimant's disease and the trauma to claimant's elbows which she experienced during the course of her employment. * * *."

The Board nevertheless found:

"As a direct result of the dermatomyositis, the claimant has been unable to work and has been advised not to work by Dr. Ward. The Board finds that said condition is permanent.

"Except for the symptoms which have been diagnosed as dermatomyositis, the claimant suffered no other injuries in the accidents arising out of and in the course of her employment, which have been diagnosed."

In its ultimate findings and conclusions, the Board stated:

"I.

"On January 17, 1970, the claimant suffered an industrial accident within the meaning of the Idaho Workmen's Compensation Law as described in the Findings of Fact heretofore entered. Under the terms of the Compensation Agreement entered into by the parties and approved by the Board on August 20, 1970, the claimant was compensated for any and all complaints and conditions from which she was suffering following her injury of January 17, 1970. This Agreement and Award compensating the claimant for any and all complaints is res judicata as to all issues which were raised or could have been raised by the defendants as defenses to the claimant's claim for compensation resulting from said accident and injury.

"II.

"The Board finds that prior to August 20, 1970, the relationship of claimant's complaints to the accident and injury of January 17, 1970, were unknown or uncertain. However, the defendants are now barred from asserting that the claimant's condition, for which she was compensated under the approved agreement as of August 20, 1970, was not causally related to said accident. [citation].

"III.

"The Board finds that the claimant is now suffering from dermatomyositis, whose etiology is unknown. The Board finds that said disease is the same disease or ailment with which the claimant was afflicted at the time the parties hereto entered into the Compensation Agreement which was approved by the Board on August 20, 1970, although at that time the claimant's condition was undiagnosed.

"IV.

"The claimant has, since August 20, 1970, experienced a change in her condition consisting of increased pain and swelling of her arms and hands and muscle weakness in her upper extremities as a result of which the claimant has become totally and permanently disabled for work.

"V.

"The claimant is entitled to an award of compensation for her total and permanent disability for work to commence October 1, 1970, on which date claimant finally ceased work on account of her disability. The claimant is further entitled to an award for all medical expenses necessarily incurred by her since August 20, 1970, in the treatment of her disease and condition and for all such expenses which she may necessarily incur in the future."

It is the appellants' contention that the Board erred in its findings, ultimate conclusions and award because of its holding that the doctrine of *res judicata* was to be applied to the approved settlement agreement as of August 20, 1970. It is the appellants' contention that there were no facts presented by the claimant from which the Board could find that there was any causal relationship between the injury suffered by claimant in January of 1970 and the ultimate diagnosis of dermatomyositis. The appellants urge that the Board erred in its determination that claimant was suffering from a work connected change of condition.

This Court in a long series of cases starting with Rodius v. Coeur d'Alene Mill Co., 46 Idaho 692, 271 P. 1 (1928), has held that the agreement of the claimant and the employer and surety to pay compensation which is approved by the Board has the same effect as an award by the Board, and that subject to review on appeal, an award in the absence of fraud is

final and conclusive, subject to modification pursuant to I.C. § 72–607. Boshers v. Payne, 58 Idaho 109, 70 P.2d 391 (1937); Reagan v. Baxter Foundry and Machine Works, 53 Idaho 722, 27 P.2d 62 (1933); Zapantis v. Central Idaho Min. & Mill. Co., 61 Idaho 660, 106 P.2d 113 (1940); Pruett v. Cranston Chevrolet Co., 63 Idaho 478, 121 P.2d 559 (1941); Fountain v. T. Y. and Jim Hom, 92 Idaho 928, 453 P.2d 577 (1969).

In Pruett v. Cranston Chevrolet Co., *supra,* a majority of this Court stated:

"In the Zapantis case, supra [61 Idaho 660, 106 P.2d 113], (approved and followed in Bower v. Smith [Triangle Construction Co.], 63 Idaho 128, 118 P.2d 737, decided at this term), after an exhaustive review of the authorities, this court held a compensation agreement between a claimant, employer, and State Insurance Fund, approved by the Industrial Accident Board, has the same effect as an award of the board, and, subject to review on appeal, is final and conclusive, in the absence of fraud, as between the parties, except that it may be modified by the board on the ground of a change of conditions, and that such an agreement is *res judicata* as to the condition of a claimant at the time a compensation agreement is made." 63 Idaho at 482, 121 P.2d at 560.

In Blackburn v. Olson, 69 Idaho 428, 207 P.2d 1160 (1949), this Court again pointed out that under the provisions of I.C. § 72–608, an award in the absence of fraud, becomes final and conclusive if no appeal is taken. Therein it was again pointed out that the doctrine of *res judicata* applies to all questions which might have been raised as well as to all questions which were raised. (Zapantis v. Central Idaho Min. & Mill. Co., *supra.*) In Blackburn v. Olson, *supra,* the question presented to this Court was whether claimant was engaged in covered employment, it being contended that upon application for modification of an agreed award, the claimant had been en-

gaged in an agricultural pursuit, noncovered employment. This Court stated "[i]n the instant case the making of the compensation agreement constituted an admission by the employer and surety, equivalent to a factual finding by the board, that the claimant was engaged in covered employment." 69 Idaho at 434, 207 P.2d at 1164.

In Nitkey v. Bunker Hill & Sullivan Min. & Concentrating Co., 73 Idaho 294, 251 P.2d 216 (1952), it was held that entering into the compensation agreement constituted an admission by the employer equivalent to a factual finding by the Board that claimant's disability was permanent and partial; no appeal having been taken therefrom, it was *res judicata* on the question as to whether or not the disability was at that time partial or total. The Court therein stated:

"The agreement of the parties to the effect that the claimant was permanently and partially disabled as a result of the accident as of May 23, 1945, the date thereof, was in the absence of an appeal final and conclusive as to the disability up to that date, and while it would preclude a later finding that the claimant was totally and permanently disabled from the date of the accident, it would not preclude a subsequent finding of total permanent disability or a greater degree of permanent partial disability upon a showing of changed conditions. [Citation.] Such an award stands as an adjudication of all matters in dispute up to the time of its rendition and neither party thereafter is permitted to say that it was wrong in any respect in the absence of fraud * * *.

"An award is not final as to a changed condition of the claimant which is attributable to the original injury. This is so because it cannot possibly be foreseen with certainty what the future condition may be and the award is not res adjudicata on such changed physical condition and hence not so on the amount which, should the condition of

the claimant change, be ultimately awarded. [Citations.]

"We hold that the original award was res adjudicata only as to the matters therein raised and determined and which might have been raised therein; that it was res adjudicata upon the proposition that the claimant was permanently and partially disabled equivalent to the amputation of a leg at the hip; it is not, and it could not be under our statute, an adjudication against a subsequent increase of that disability upon a change of conditions." 73 Idaho at 297, 298, 251 P.2d at 218.

Carter v. Superior Court, 142 Cal.App.2d 350, 298 P.2d 598 (1956), dealing with a question of *res judicata* by Industrial Accident Commission approval of a compromise agreement states:

"There is another reason why the facts pleaded in the stricken defense constituted a meritorious defense to the action. The question of whether or not an injury is one which arises out of the employment, and is therefore one which is within the exclusive jurisdiction of the Industrial Accident Commission, is a question of fact. Greenwood, by filing his application with the Commission and by requesting the Commission to approve the agreement for compromise and release and to enter its award thereon, submitted this question of fact to the Commission. In acting upon the application and approving the agreement for compromise and release, the Commission impliedly and necessarily found that the injury did arise out of the employment, for otherwise it could not have found that it had jurisdiction to make its award. [Citations.] Its award was therefore an adjudication of the fact that the injury occurred by a risk or condition incident to Greenwood's employment and that the injury was one falling within the exclusive jurisdiction of the Commission; and being final, it is res judicata of that fact, and if proven

at the trial of the action would preclude the respondent court from further exercising jurisdiction in the subject action. [Citations.]" 298 P.2d at 601–602.

In the instant proceeding, for the Board to have taken jurisdiction for approval of the agreement between the parties it would of necessity have had to find the facts essential to the making of an award. It would have had to have determined: that the claimant was an employee of the appellant; that claimant was working in covered employment; that she received a "personal injury caused by an accident arising out of and in the course of any employment"; and the amount of compensation to which the parties had agreed.

By the filing of the agreement of the parties and the approval by the Board, the issue as to whether claimant suffered a "personal injury caused by an accident arising out of and in the course of any employment" was removed from any area of controversy, no appeal having been taken from the award. Those facts having been submitted to the Board and approved become *res judicata* as to the parties to that proceeding. In this case the basis of the award was the unresolved issue of the nature of the claimant's injuries, and by submission of this agreement to the Board for approval, it was an implied admission by the employer, its surety, and the claimant that the *injury* was one under the jurisdiction of the Board. By reason of the provisions of I.C. § 72–607, the unresolved issue as to the subsequent "change of conditions" was an open one, subject to further litigation upon application by any party.

Here the claimant contended that there was a *change* of her *condition*. The Board found

"* * * She returned to her former job following the approval of the Compensation Agreement on August 20, 1970. She was not able to perform her work steadily as she continued to have considerable pain, swelling and discomfort in her arms. These symptoms were the

same symptoms which she had previously experienced but during the period following her return to work they increased in severity to the point that she had constant pain in her arms and shoulders. The claimant ceased working the first of October 1970, due to this condition and she has not worked since."

The Board also found

"As a direct result of the dermatomyositis, the claimant has been unable to work and has been advised not to work by Dr. Ward. The Board finds that said condition is permanent."

As previously pointed out, the Board in its conclusions held that the disease diagnosed as dermatomyositis was the same with which claimant was afflicted at the time of the approval of the agreement, and further held that claimant was totally and permanently disabled for work.

Claimant testified that after she returned to work following the approval of the compensation agreement she performed the same duties as before but she could not perform her duties in a satisfactory manner because her arms "hurt so bad." She further testified:

"Q. Did you have any symptoms that you noticed.

A. Swelling, the same as I had before, but it was worse.

Q. How was it worse.

A. Well, it swelled up so tight, I couldn't move my fingers. My arms swelled up.

Q. Had this ever happened before.

A. It had happened before when I was working before I got through last spring. It was worse when I went back."

She then testified that she missed quite a few days work, but that she finally had to stop working in the latter part of September and did not "work much" after the first of October. She stated:

"Q. What was your condition at this time.

A. It was real bad.

Q. What would you describe as real bad.

A. The arms swelled so bad and the pain was there all of the time. I never had days without pain.

Q. The pain, where.

A. All the way up through my arms and shoulders.

Q. Was it worse at this time than prior to August the twentieth, 1970.

A. Yes.

Q. Much worse.

A. Yes."

The symptoms described by claimant were the same as she had disclosed to the panel of doctors whose recommendations led to the agreement between the parties and approved by the Board.

It is thus my conclusion that the findings of the Industrial Accident Board are fully sustained by the evidence and that the award should be affirmed.

BAKES, Justice (dissenting).

I concur in the dissenting opinion of Justice McFadden. The determinative issue, as I see it, is whether or not there is substantial and competent evidence in the record to support the finding of the board that the "[dermatomyositis from which the claimant is now suffering] is the same disease or ailment with which the claimant was afflicted at the time the parties . . . entered into the compensation agreement which was approved by the board . . ."

If so, then the board's approval of the compensation agreement is res judicata on the issue of causation. Blackburn v. Olson, 69 Idaho 428, 207 P.2d 1160 (1949).

As Justice McFadden pointed out in his dissenting opinion, there is substantial and competent evidence to support the board's finding, and therefore the decision of the board should be affirmed. Griffin v. Potlatch Forests, Inc., 93 Idaho 174, 457 P.2d 413 (1969).