KIMBELL MILLING COMPANY and Associated Employers Lloyds, Petitioners,

v.

G. W. TUNIS and the State Industrial Commission, Respondents.

No. 37226.

Supreme Court of Oklahoma.

Dec. 26, 1956.

Looney, Watts, Looney, Welch, Hamill & Nichols, Oklahoma City, for petitioners.

Tom Hieronymus, Woodward, Mac Q. Williamson, Atty. Gen., for respondents.

DAVISON, Justice.

G. W. Tunis, hereinafter called claimant, filed his first notice of injury and claim for compensation stating that he sustained an accidental injury due to a fire. Claimant was severely injured in a fire while employed at a grain elevator in Woodward, Oklahoma, owned and operated by Kimbell Milling Company. This fire occurred on the 23rd day of December, 1954, after which claimant was hospitalized due to the injury.

The State Industrial Commission entered an award a part of which is as follows:

"That as a result of said injury, claimant sustained 12.5 per cent permanent partial disability to each eye, which resulted in 12.5 per cent permanent partial disability to the body as a whole for the performance of ordinary manual labor, for which claimant is entitled to compensation for 62.5 weeks at $28.00 per week, and sustained 5 per cent permanent partial disability to his right hand, for which he is entitled to compensation for 10 weeks at $28.00 per week, that claimant sustained

serious and permanent disfigurement to his left wrist, for which he is entitled to $225.00, and sustained serious and permanent disfigurement to his right wrist for which he is entitled to $75.00; his neck, for which he is entitled to $300.00; his right ear, for which he is entitled to $200.00; his left ear, for which he is entitled to $100.00, making in all $900.00 due claimant on disfigurement by reason of said accidental personal injury, which shall be paid in a lump sum."

There is no dispute about the facts causing the accidental injury. The petitioners do not deny that claimant sustained an accidental injury resulting in disability. The sole argument contests the disability due to an injury to the eyes.

It is first argued that there is no competent evidence reasonably tending to support the finding that there is a disability to the eyes due to the accidental injury of December 23, 1954.

Claimant was examined and treated by three doctors following the accident. At least one of these doctors used ointment or gave claimant ointment to bathe his eyes. Dr. R in his report states:

"Diagnosis and conclusions: Subnormal accommodation or premature presbyopia due to under action of the nerve and muscles which control the focusing mechanism of the eyes. This condition is a normal occurrence with age but is premature in this case and in my opinion, is due to some reflex action on the nervous system following the injury which he sustained. Without lenses there is no loss of vision for distance but a little over 50% loss for near vision which is customarily averaged with distance vision in quoting percentage loss. This would make it 25% visual loss without lenses but no loss of vision with the correction of near vision with lenses. There was no pathological changes noted in the eyes otherwise."

In his testimony he also stated:

"Q. Well, now, Doctor, with the history that you have and the history you had, and the examination that you conducted, you formed an opinion at that time, did you not, that this was due to the injury and accident that he had on December 23, 1954? A. Yes, I formed an opinion on the basis of the experience that you would expect the average patient to see at that age.

"Q. And also, Doctor, assuming this state of facts: that he was in this elevator, that there were several explosions, that one explosion was severe enough to knock him down, that he was burned in different places about the body and burned in the eyes, assuming further that he had no trouble with his eyes prior to this time, that he did not use glasses prior to the date of the accident, then would your opinion be that this condition was brought on by the accident and injury that he received there? A. That would seem to have a direct relationship, yes, from the history.

"Q. And that condition that was brought on as a direct relationship of that, in your opinion, is 25 per cent loss of vision to both eyes? A. Yes.

\*　　\*　　\*　　\*　　\*　　\*

"Q. But, Doctor, under the state of facts present, and under the history as given you in your examination, you can with reasonable certainty give an opinion that that was, the condition you found, was a result of that accident, can't you? A. I thought the physiological condition had been accelerated; that was my opinion.

"Q. And that brought the condition on? A. Uh-huh, that's right."

Petitioner relies on Cohenour v. Smart, 205 Okl. 668, 240 P.2d 91 on the theory that the medical testimony is not sufficiently definite as to the eye injuries. That case is distinguishable from the case under consideration. Therein it was held there

was no corroborating testimony to support the testimony of the medical witnesses.

It is not disputed in the present case that the eyes were in some way affected by the fire at the time of the fire; that three doctors examined the eyes to determine the extent of the injury; that at. least one doctor gave claimant some solution to use in his eyes.

In Nu-Way Laundry & Cleaners v. State Industrial Commission, 194 Okl. 101, 147 P.2d 795, we considered a case in which there was a conflict in the testimony as to crossed eyes of claimant. There was no other pathology. In sustaining the award the court said:

> "Where an award is sought to be vacated on the ground that the expert's testimony was insufficient to establish a causal relation between a personal accidental injury and a subsequent disability, said award will not be vacated if the testimony of the expert witness establishes that the disability was the probable result of the injury."

We have repeatedly held that the cause and extent of a disability resulting from an accidental injury are questions of fact and if there is any competent evidence reasonably tending to support the finding of the State Industrial Commission an award based thereon will not be disturbed on review. Okemah Publishing Co. v. Aaron, Okl., 285 P.2d 410; Ferguson v. Pools by Paddock, Okl., 282 P.2d 770; and United Zinc Smelting Corporation v. Wise, 198 Okl. 501, 180 P.2d 169.

Under the rule announced in the foregoing cases the evidence is sufficient to sustain the finding of the State Industrial Commission that the disability to the eyes was caused by the accidental injury of December 23, 1954.

In the second proposition petitioners argue, assuming the accidental injury caused the disability to the eyes the entire percentage of disability could not be allowed against petitioners. It is argued that this percentage should be based on the mortality table calculated from the date of the acci-

dent to some assumed time in the future when loss of vision would occur. No authorities are cited in support of this contention.

There was no evidence of disability to either eye prior to the accidental injury and there is no evidence that prior to the accidental injury claimant had any loss of vision.

Award sustained.