**CHANNING et al. v. PAYTON et al.**

No. 22591.   Opinion Filed Oct. 13, 1931.

Ray McNaughton, J. Fred Swanson, and Arthur G. Croninger, for petitioners.

William M. Thomas, for respondents.

RILEY, J. This is an original proceeding in this court to review an order and award of the State Industrial Commission.

On September 5, 1930, the respondent, Amos Payton, while in the employ of petitioner Channing, agent of Adams Mine, received an accidental injury in the course and growing out of said employment and covered by the Workmen's Compensation Law. The nature of the injury was "sprained back and injured side."

Report of the injury was filed with the State Industrial Commission on September 11, 1930. Weekly wages were $21, and weekly rate of compensation $13.40. Payments were commenced on September 13th. On January 26, 1931, there was presented to the Commission a stipulation and agreement for settlement on form No. 7, prescribed by the Commission, in the total sum of $269.20, representing compensation for 20 weeks and five days. This settlement was disapproved by the Commission. However, the $269.20 was paid to claimant. On May 28, 1931, the Commission issued notice of the hearing "to determine extent of disability (disapproval of form No. 7 agreement)". Hearing was had, resulting in an order and award for 18 weeks additional compensation computed from January 30, 1931.

The contention of petitioner is that there was no competent evidence to support the order and award.

From the record it appears that claimant was working in and about the mine. The cable used in operation of some parts of the machinery came loose and struck him on the back and side. About two days thereafter he was taken to the hospital, where he received treatment, but did not remain therein. The injury was recognized by the employer and insurance carrier as sufficient to justify compensation, which, as stated, was paid regularly until about January 25, 1931. at which time the settlement agreement was signed.

Dr. Butler appears to have treated claimant at first, and sometime about October 31, 1930, Dr. Albert Aisenstadt examined and treated claimant. Dr. Aisenstadt and the claimant were the only witnesses. Claimant testified that from the date of the injury he had been unable to do any work; that he had tried to do farm work, such as plowing, hoeing, etc., and that he was not able to perform such labor, but had done some little repair work on automobiles where he had the assistance of a helper; that he had never had any disability before except the loss of a thumb about four years prior to the hearing, and that he was still unable to work at the time of the hearing; that he still suffered from his back.

Dr. Aisenstadt testified, in substance, that he examined and treated claimant about October 1, 1930; that at this examination claimant had some rigidity of the lumbar muscles, in part voluntary; that the muscles relaxed as claimant was placed in different positions; that claimant admitted venereal disease some years before a blood count was taken which proved to be "Four Plus," indicating active syphilis; he was given back treatment—"physo therapy." After discovery of syphilis involvement, neo-salvarsan, commonly known as 606, was administered; subsequently another injection of neo-salvarson was given; that on January 1st, he had claimant come back with intention of giving him another complete examination; that at that time claimant advised him that he was considerably improved, and believed he would be able to resume his work if not placed at too hard a task to start with; that all symptoms were gone, only leaving general weakness. He then testified at length that it was his opinion that at the date of the hearing, June 9, 1931, whatever pain claimant was then suffering, or had suffered after January 30, 1931, was due to syphilis and not to the accidental injury.

It was also in evidence that claimant had been tendered a complete course of treatment for syphilis, but that he had declined the treatment. Claimant, however, testified that this tender was upon condition that he pay $5 per treatment. Claimant also testi-

fied that he had never, to his knowledge, had syphilis.

Dr. Aisenstadt never saw or examined plaintiff after January 1, 1931.

The question before the Commission was whether claimant's condition from and after January, 1931, was due to the injury or to syphilis.

The Commission found it due to the injury.

The question here is whether there is any competent evidence to support this finding.

The case, as we view it, is one coming close to the class known as subjective symptoms as defined in Federal Mining & Smelting Co. v. Montgomery, 148 Okla. 145, 297 P. 240, as it is conceded that the symptoms of disability during the period mentioned were purely subjective. The claimant, being a layman, was in no position to testify as to the cause of the pain which he testified he suffered. The symptoms being purely subjective, the only competent evidence of such cause is necessarily medical or expert testimony.

In St. Louis Mining & Smelting Co. v. St. Indus. Comm., 131 Okla. 179, 241 P. 170, this court held:

"When in an action for personal injury, the injury complained of is of such a character as to require skilled and professional men to determine the cause and extent thereof, the question is one of science, and must necessarily be proven by the testimony of skilled professional persons."

Of course, claimant was a competent witness to prove that he suffered pain, but was not an expert witness so as to qualify him to testify as to the cause of the pain. It is argued in effect by attorney for claimant that, the employer and insurance carrier having once admitted that claimant suffered such accidental injury as to entitle him to compensation, and having paid such compensation for the time mentioned, the presumption would arise that any pain existing in the region of the original injury was due to such injury, and that this presumption continues in claimant's favor so as to leave the question one of fact to be determined by the Commission upon the presumption thus arising and the testimony of the expert witness. No case is cited by claimant directly supporting this theory. He cites Employer's Liability Assurance Co. v. Coffman, 147 Okla. 227, 296 P. 395, which holds:

"Where petitioners admit that respondent suffered an accidental injury arising out of and in the course of employment resulting in total disability and seek to avoid payment of compensation on the ground that disability had ceased, and that the continued disability of respondent was the result of disease, the burden of proving such change is on petitioner."

In that case there appeared to be an absence of expert testimony such as we have in the instant case. It was held that the petitioners failed to meet the burden in that they failed to produce the proof essential to show that the pre-existing disease and not the accidental injury caused the disability. In the instant case we have the evidence that was there wanting. However, we also have the admission that the accidental injury caused the disability in the first instance.

While no case has been called to our attention holding that such presumption as contended for by claimant is indulged, we are constrained to hold that such presumption would be reasonable and proper. For a certain physical condition, admitted to exist and admitted to be attributable to a certain accidental injury, ought not to be said to be attributable to any other cause because the condition continues longer than would ordinarily be expected from the nature of the injury, unless there is evidence reasonably tending to establish such other cause.

If this presumption is to be indulged, and we think it should, then it would seem to be entirely for the State Industrial Commission to say whether or not it has been overcome. In other words, although the expert witness has testified and given his opinion as to the cause of the condition of claimant, taking into consideration the fact that the physician had not seen or examined the claimant for more than five months next before giving his testimony, such medical or expert testimony is not necessarily binding in all cases upon the Commission in the absence of medical or expert testimony to the contrary. Ordinarily we would, in view of the previous holdings of this court, hold, if examination of claimant be within a reasonably short time before the expert gives his testimony, that it would. But in this case, where it appears that the examination was made more than five months before the hearing and one month before the expiration of the time during which compensation was admittedly payable, we hold that such expert testimony is not necessarily conclusive and binding upon the Commission and that the Commission was not necessarily bound to find and hold that this evidence of the expert witness was sufficient to, and did

overcome the presumption that ought to, and does exist in favor of the claimant.

The petition for review is, therefore, denied, and the award of the Commission is affirmed.

LESTER, C. J., and HEFNER, CULLISON, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. CLARK, V. C. J., concurs in conclusion.