### SKELLY OIL CO. v. ROSE et al.

No. 25850.   March 17, 1936.

W. P. Z. German, Alvin F. Molony, Robert M. Turpin, Wm. F. Pielsticker, and C. L. Swim, for petitioner.

Champion, Champion & Fischl, for respondent.

BUSBY, J. This is an action to review an award of the State Industrial Commission granting compensation for temporary total and permanent partial disability to Burney Rose, an employee of the Skelly Oil Company. The disability for which compensation was awarded is asserted by the employee to have been the result of an accidental personal injury which occurred on February 14, 1933, while he was admittedly engaged in an occupation classified as hazardous under the Workmen's Compensation Act.

Our review of the record convinces us that the award must be vacated. The basis of our decision, however, is such that a recovery is not thereby precluded, and in order that confusion in the future hearings on this case before the State Industrial Commission may be avoided and to eliminate the necessity of another review of such action as the commission may take, we shall not restrict our discussion entirely to the particular question which constitutes the immediate basis of our opinion.

On the 14th day of February, 1933, during a period of very cold weather, the claimant, an oil field employee, was attempting to "thaw out" some frozen connections by pouring boiling water on them. According to his testimony there was a quantity of crude oil around the connections, the same being about one and one-half inches thick on the ground. When the hot water struck the connections and crude oil, gas or vapor arose, the claimant began to choke and gasp and finally became unconscious. This happened about 12 noon. Claimant regained consciousness a few minutes later. He made his way to his car and drove home. Despite the coldness of the weather he had to keep the windows of his car open on the way home in order to get enough fresh air to retain his consciousness.

The claimant returned to work the next day, but quit working the third day after the accident because of his physical condition. He first consulted a doctor the evening of the day following the accident. He also within a short time told the superintendent, a Mr. Cummings, of the accident.

On the hearing of this cause, medical testimony was produced in behalf of the claimant supporting the view that subsequent to and because of the accident the claimant was suffering from active pulmonary tuberculosis. This medical testimony proceeds upon the theory that prior to the accident the claimant was affected with dormant or inactive tuberculosis, of which he was not aware and which did not then constitute a disability; that the choking, gasping, and inhalation of vapors or gases changed the tubercular condition from one of dormancy to one of activity which created the disability which constitutes the basis of the award herein reviewed.

The claimant relies upon the rule long recognized in this jurisdiction in connection with workmen's compensation cases that an accidental injury which aggravates or produces activity of a latent or dormant disease, thus creating a disability which did not previously exist, is compensable. Manhattan Construction Co. et al. v. Tottress et al., 161 Okla. 69, 17 P. (2d) 407; Fairmont Creamery et al. v. Lowe, 160 Okla. 32, 15 P. (2d) 133; Lee Drilling Co. et al. v. Ralph et al., 156 Okla. 140, 9 P. (2d) 954; Petroleum Chemical Corp. et al. v. State Industrial Commission et al., 154 Okla. 67, 6 P.

(2d) 775; Coline Oil Corp. v. Burrows et al., 153 Okla. 116, 3 P. (2d) 230; Protho et al. v. Nette et al., 173 Okla. 114, 46 P. (2d) 942.

The employer in this case does not dispute the compensable nature of claimant's disability, but does dispute the existence of competent medical testimony sufficient to show a **causal connection** between the claimant's disability and the accident above described. It is asserted that this **causal connection** can be established by expert testimony alone and that none of the witnesses produced by claimant were qualified to express an opinion on the subject. The legal basis of the argument is the established rule that when an injury is of such a character as to require skilled and professional men to determine the cause, nature, and extent thereof, the question is one of science and must necessarily be established by the testimony of skilled professional persons. Williams Bros., Inc., v. State Ind. Comm. et al., 158 Okla. 171, 12 P. (2d) 896; Oklahoma Hospital v. Brown. 87 Okla. 46, 208 P. 785; Channing et al. v. Payton et al., 152 Okla. 153, 4 P. (2d) 1; James I. Barnes Const. Co. et al. v. Hargrove et al., 167 Okla. 348, 29 P. (2d) 573.

In invoking this rule the employer produced a specialist on chest diseases who had also made a special study of oil field gases and vapors. This specialist, who had examined claimant, was of the opinion he did not have tuberculosis at all, but, on the contrary, was suffering from a condition known to the medical world as emphysema and other associated complications. He was also of the opinion that claimant's alleged accident, if it occurred at all, had nothing to do with his present condition. He testified that oil field gases were not productive of tuberculosis. Incidentally he entertained the opinion that even the more severe gases used in war were not contributing causes of tuberculosis, although he stated others, who had also studied the question, were of a different opinion.

The doctors who testified in claimant's behalf as to the cause of his disability were not specialists. Ordinarily the difference between the testimony of an ordinary physician and a specialist in a given medical field is one which relates to the weight of the evidence and not the competency thereof. However, the employer in this case urged that the doctors who testified in claimant's behalf were admittedly not qualified to express an opinion on the cause of his disability. After a thorough examination of the claimant's medical testimony, we are unable to agree with this conclusion. For instance, Dr. Phil White, a practicing physician who examined claimant, testified in substance that while he was without detailed technical knowledge of the chemical contents of different oil field gases, he was sufficiently familiar with them to know that some were irritating and some were not. He further advised the commission that, regardless of whether the gases inhaled by claimant were irritating or nonirritating, they might, and in this case did, in his opinion, produce claimant's disability. He testified nonirritating gases could reduce the oxygen content of the air, thus causing the victim to gasp and choke and thereby create activity of dormant tuberculosis. This doctor admitted that he probably possessed no greater knowledge of the subject-matter of his testimony than that probably possessed by the average physician. He admits there are limitations on his technical knowledge in some respects, but asserts sufficient familiarity with the subject to enable him to arrive at a definite conclusion, namely, that claimant's disability is the result of the accident. In arriving at his conclusion he accepted the history given by claimant as true.

We take it to be indisputable that the claimant, a layman, could determine when he choked and gasped, and became unconscious, without advice from a doctor. The truthfulness of his statement in that respect was a question of fact for the fact-finding body, State Industrial Commission. We also take it as undeniable that a doctor may consider the history as given by a patient in diagnosing a case, especially where, as in this case, the facts constituting the history are supported by the patient's sworn testimony. Thus in this case the conclusions announced by the doctors who testified in behalf of claimant presented a question of fact for the trial tribunal. We think that they, and in particular Dr. White, were sufficiently qualified to express an opinion, and we are unable to write a rule of law that would compel a fact-finding body to disregard the testimony of a general practitioner of medicine merely because it is opposed by that of a specialist in a given field. We do not mean that a general practitioner is always qualified on every question relating to medical science, but we do hold that Dr. White sufficiently qualified himself in this case to render his opinion competent as a matter of law. The weight and credit to be given his testimony was one for the final

determination of the fact-finding body. Since this award must be vacated on other grounds, this evidence is, of course, subject to reconsideration, but its legal sufficiency is approved.

The commission found that claimant suffered from temporary total disability from the date of his accident until February 16, 1934, and thereafter from permanent partial disability. Justifiable complaint is made of this finding.

The questions of when temporary total disability ceases and when permanent partial disability commences are questions of fact to be decided by the commission from the evidence introduced. Mead & Phillips Drilling Co. et al. v. Rush et al., 158 Okla. 265, 13 P. (2d) 78.

In this case there is no evidence pointing to the date above mentioned as the dividing line between the two classes of disability Nor do counsel for claimant undertake to point out the existence of such evidence. Their answer is that there is testimony in the record indicating that claimant is suffering from permanent total disability and that, since the award for permanent partial plus the award for temporary total is less than an award which could have been made for permanent total, the employer cannot complain. In other words, they assert that the error, if any, was favorable to the employer, who cannot now complain of the same. If the only evidence touching upon the extent of claimant's disability were that he is totally and permanently disabled, the point might be well taken. However, the extent of his permanent disability was disputed. The commission adopted the view that it was permanent partial. The award for permanent partial and temporary total were cumulative, and the employer has a right to have its weekly payments credited on permanent partial as of the date when such disability in fact commenced. Assuming (for we cannot decide from the evidence in this case) that claimant's temporary total disability commenced at a date earlier than that fixed by the commission, say, for instance, July, 1933, then thereafter compensation payments should be based upon permanent partial disability and credited upon compensation awarded for such disability. The prejudicial effect of an erroneous finding on this question of fact is thus apparent.

The employer is entitled to have this fact which bears upon the ultimate extent of his responsibility determined according to competent evidence. The absence of any evidence supporting the finding demands a reversal of the award.

It is pertinent to observe in passing that when a disability is progressive in nature, the time of termination of the temporary total disability or the commencement of permanent partial must of necessity be somewhat of an approximation and therefore to a certain extent arbitrary. This, however, does not justify a determination of the question of fact unsupported by any testimony.

Since claimant does not assert the existence of evidence supporting the finding, a search of the record for evidence to support the finding and an analysis of such evidence as might be found touching upon the question is unnecessary.

In the award in this case the disability is, according to the findings of the commission, based in part upon a back injury. Without passing upon the sufficiency of the evidence to indicate the existence of such an injury or to demonstrate a causal connection between the accident and such injury, if it does exist, we suggest that in the further proceeding in this case the evidence dealing with this phase of claimant's alleged disability be carefully considered by the commission.

There are other questions in this case which need not be considered. The award is vacated, with directions to proceed in a manner not inconsistent with the views herein expressed.

McNEILL, C. J., OSBORN, V. C. J., and PHELPS and CORN, JJ., concur. GIBSON, J., concurs in conclusion.