(No. 6814.   December 9, 1940.)

HARP FACKENTHALL, Appellant, v. EGGERS POLE & SUPPLY COMPANY, a Corporation (Sometimes Called EGGERS POLE COMPANY), Employer, and NORTH-WEST INDEMNITY EXCHANGE, Surety, Respondents.

[108 Pac. (2d) 300.]

E. B. Smith, Samuel F. Swayne and Hawley & Worthwine, for Appellant.

Ralph S. Nelson and Spencer Nelson, for Respondents.

AILSHIE, C. J.—July 29, 1935, appellant received an injury to his back while in the employ of respondent Eggers Pole & Supply Co. Subsequently an agreement was reached between appellant and the employer and respondent Northwest Indemnity Exchange, hereinafter referred to as surety, which agreement was approved by the board January 14, 1936; and by the terms of which appellant was paid the sum of $273.63 for "temporary disability for work" for the period from July 30 to December 24, 1935. Appellant went back to work in May, 1936, and worked during the remainder of the year 1936. Some time in the fall of 1936, while at his home, he injured himself by stepping on a

plank; the bark came off and he fell and bumped his elbow. He went to Dr. Hopkins who examined and X-rayed him. He thereafter improved so that he again went to work and pursued different occupations until some time in the fall of 1938. He also did considerable work in the late winter and early spring of 1939. July 25, 1939, he filed his application with the board for modification of the award, on the ground of a change in conditions. (I. C. A., sec. 43–1407.) The essential grounds on which the petition is predicated are stated in the petition as follows:

"That this condition [original injury] has continued to get worse ever since and there has developed therefrom as claimant is advised by Doctors whom he has consulted a condition or ailment which did not exist at the time of the injury or at the date of the agreement with the surety. That claimant is unable to state the technical name for this condition but as he is advised and understands from his physician that it is a bone and nerve disorder caused by irritation set up by a detached coccyx (piece of tail bone); That claimant is unable financially to consult specialist or to have the necessary x-rays taken to technically diagnose the condition of this claimant except that it has been called Arthritis by his Doctor."

A hearing was had on this petition March 19, 1940, and the board thereafter made exhaustive findings, the essential portion of which is stated as follows:

"That the degeneration of the spinal cord of which claimant is suffering is a disease and is not the result of the claimant's injury sustained by him in July, 1935, and has not been contributed to by the injury of July 29, 1935; that claimant is now totally disabled for work as a result of said degeneration of the spinal cord and that his disability is not the result of the injury by accident sustained by him on the 29th day of July, 1935, as above stated; that while claimant is now totally disabled for work as a result of the degeneration of the spinal cord, there has been no change in conditions due to his injury by accident sustained by him on said July 29, 1935."

and thereupon the board denied and dismissed the application.

It would be useless to attempt to recite the testimony in this case. The greater and material part, however, of it is that given by the physicians who either treated or examined appellant or testified in response to hypothetical questions. The doctors who testified were: Adams, Hopkins, O'Leary, Palmer, Pappenhagen, and Robertson. There was some diversity of opinion among them as to the exact cause of appellant's condition at the time this application was made and heard. It was agreed, however, among the majority of the doctors and corroborated by the X-ray pictures, that there had been no fracture of the coccyx. It was likewise agreed by the majority of the doctors that appellant was suffering from "degeneration of the spinal cord."

We have uniformly held that the burden of proof rests on the party who seeks an order declaring "a change in conditions" arising from an injury sustained by the workman. (*Boshers v. Payne,* 58 Ida. 109, 70 Pac. (2d) 391, and cases cited.) We have likewise held that

"Where there is no change in condition, the department cannot rehear the case on its merits and determine under the evidence that the claimant was totally disabled and had been since his injury, and make an award increasing his weekly compensation." (*Boshers v. Payne, supra,* and cases there cited; *Zapantis v. Central Idaho Min. etc. Co.,* 61 Ida. 660, 106 Pac. (2d) 113.)

A great deal of evidence was elicited from the doctors above named, as to the probable cause of the "spinal degeneration" from which appellant was suffering. The majority, however, were positive that there is no connection between the original injury sustained and the present condition of appellant; while at least one of them is quite certain that the original accident is the cause of claimant's present condition. The evidence is of such a character and nature as might lead different minds to different conclusions as to the cause of the ailment about which they were testifying. This, however, is a good illustration of the wisdom of the rule, and perhaps a justification for it, that this court should not disturb the findings of the board when the witnesses have personally appeared and testified before them, whereas, the court has not had the opportunity of observing their

appearance and demeanor and the manner of their testifying. (See *Phipps v. Boise Street Car Co.*, 61 Ida. 740, 107 Pac. (2d) 148.) Furthermore, in this case a partial physical examination was had by these doctors in the presence of the board.

It is seriously urged, however, by counsel for appellant, that the negative testimony of respondent's experts should have no weight as against the positive testimony of appellant's doctor who attended and treated him at all times since the accident occurred. The general principle embodied in this contention is sustained by the case of *Beaver v. Morrison-Knudsen Co.*, 55 Ida. 275, 41 Pac. (2d) 605, cited by counsel. But appellant presses the contention too far. The rule does not imply that such testimony may not be considered by the triers of the facts at all but that, in weighing the testimony as between those who testify to a positive and those who testify to a negative, the testimony of the one who testifies to the positive should have greater weight than the one who testifies to the negative. (*Fleenor v. Oregon Short Line R. R. Co.*, 16 Ida. 781, 795, 102 Pac. 897; *Kerby v. Oregon S. L. R. R. Co.*, 45 Ida. 636, 647, 264 Pac. 377; *Jakeman v. Oregon S. L. R. R. Co.*, 43 Ida. 505, 512, 256 Pac. 88].) And, furthermore, the witnesses who testified in behalf of respondent here apparently all saw appellant and some, if not all of them, were present when a partial physical examination was made. So, while the testimony of all these doctors was *expert* testimony, those who testified only in response to hypothetical questions gave merely *expert opinions.*

We should not overlook the fact that sometimes there may be a difference between degrees of expert testimony and opinion evidence. The expert often testifies as to the effect or result of natural or scientific facts, which have been proven or demonstrated by him or by acknowledged leaders of his profession and which may not be known or fully apprehended by the layman unskilled in the profession of the particular expert. (*Dougherty v. Milliken,* 163 N. Y. 527, 57 N. E. 757, 79 Am. St. 608; *Copenhaver v. Northern P. Ry. Co.*, 42 Mont. 453, 113 Pac. 467, 470.) On the other hand, the expert may apply his scientific knowledge to a hypothetical

state of facts and thereby express an expert opinion. It has also been held ''proper for a qualified expert witness to give his opinion as to whether certain assumed facts were the cause of a subsequent condition.'' (*Hayhurst v. Boyd Hospital*, 43 Ida. 661, 671, 254 Pac. 528.) There should, and there ordinarily will be, more weight given to the testimony of one who testifies from first hand knowledge than will be given to the one who testifies alone on a hypothetical state of facts. (*Kelly v. Perrault*, 5 Ida. 221, 232–240, 48 Pac. 45; 39 L. R. A. 333n.)

Counsel for appellant have analyzed the expert evidence in this case with skill and care and have emphasized its relative strength and weaknesses with candor and fairness, giving numerous apt citations of authorities. After all is said, however, we come back to find a substantial conflict in the evidence on which the board has passed. We cannot say that there was not sufficient evidence before the board to sustain their order denying appellant relief; or to put it in other form,—we cannot say that there was sufficient substantial, uncontradicted evidence submitted to constrain the board to find that ''a change in conditions'' had occurred within the meaning of the statute. (Sec. 43–1407, I. C. A.) The burden of proof was on the claimant. (*Boshers v. Payne*, 58 Ida. 109, 114, 70 Pac. (2d) 391.)

The order of the board is affirmed. No costs awarded.

Budge, Givens and Holden, JJ., concur.

Morgan, J., deeming himself disqualified, did not sit at the hearing or participate in the opinion.