## NU-WAY LAUNDRY & CLEANERS v. STATE INDUSTRIAL COMMISSION et al.

No. 31580. April 11, 1944.

147 P. 2d 795.

Lillard & Tant, of Oklahoma City, for petitioner.

S. J. Clay, of Oklahoma City, and Randell S. Cobb, Atty. Gen., for respondents.

BAYLESS, J. This is an original proceeding in this court brought by Nu-Way Laundry & Cleaners, a corporation, hereinafter referred to as petitioner, to obtain a review of an award made by trial commissioner of the State Industrial Commission in favor of Elizabeth Hinkle, hereinafter referred to as respondent.

On March 30, 1943, respondent sustained an accidental personal injury when she struck the corner of her right eye against a steel pin. In addition to causing pain the injury caused the eye to become discolored and raised a small welt or knot on the conjunctiva. The respondent reported the accident either the day following its occurrence or the day thereafter and was given first aid treatment for a bruise. Respondent continued to discharge the duties of her employment for some three or four days and again made complaint to her employer and was then sent to Dr. Hayes for examination. This doctor apparently considered the injury a trivial one and one which required no treatment, for he directed the respondent to go back to work and to report in a month or six weeks for further observation. The respondent returned to her employment and continued to discharge her duties until April 13, 1943, when she quit, as she says on account of the condition which had developed in her eye but which was within six days after her husband had been discharged by the petitioner. On May 20 or 22, 1943, respondent returned to Dr. Hayes for further observation and at that time reported that her eyes had become crossed, whereupon Dr. Hayes suggested an examination by an eye specialist and sent her to Dr. McDonald. On May 24, 1943, respondent went to Dr. McDonald and was examined by him both on that date and several times thereafter. On June 9, 1943, respondent filed with the State Industrial Commission employee's first notice of injury and claim for compensation for disability in the form of crossed eyes which she alleged had resulted from the injury sustained on March 30, 1943. The petitioner denied that the disability had resulted from the injury sustained and alleged that the claim was a fraudulent one and had been filed for the purpose of revenge. A trial commissioner conducted hearings to determine liability and extent of

disability. The respondent offered no medical evidence to support her claim that the disability which she had was one which had resulted from the injury sustained. Petitioner called Dr. McDonald as a witness and he testifed on direct examination as follows:

"Q. From the information you got and your study of the case and your observation of her, do you find any direct relationship between the accident and injury which she now complains of and her present complaints? A. I don't know how the accident could cause the crossed eye; don't know what damage it could do to cause the eye to cross. The damage or blow was not in the eye but in the external corner of the eye. I can't see how it would cause it to cross. Q. That would cause inflammation and redness, would it? A. Yes, sir."

Respondent relied upon the testimony of this witness on cross-examination wherein he testified in response to the following hypothetical questions:

"Q. Doctor, assuming that on March 30, 1943, this claimant sustained an injury to the right eye by sticking a steel pin in the eye, at the outer and inner corner, just outside and just on the inside corner of the right eye, external corner, by bumping her head on this steel pin while working for the respondent, Nuway Laundry, and this happened about 3 o'clock in the afternoon and before she quit work that day at the regular quitting time, being 6 p. m., that eye was blood-shot and extremely red inside and outside and black and blue all down here, and it continued to grow worse, and redness, blood-shotness and blueness of the bruise and turned black, and assuming further that she had never had any trouble with her eyes before this accident and had never had any cross-eyedness prior to this accident, could such an accident and blow as she described to produce that condition? A. If that is so, it is possible, if she didn't have the cross-eyedness before the accident and then did immediately following the accident, soon afterward, one would naturally think it had something to do with it. Q. Assuming further the cross-eyedness didn't take place on her until three or four weeks after the accident and injury to the eye, that could also happen with such an injury, couldn't it? A. Yes, if that is so, if she

didn't have it before and if it is true she had the accident."

The disability for which respondent was seeking compensation was of such character to require a determination of its nature, cause, and extent to be made by skilled and professional persons and of necessity had to be proved by the testimony of such persons. Eagle-Picher Lead Co. v. Black, 164 Okla. 67, 22 P. 2d 907; J. J. Harrison Construction Co. v. Mitchell, 170 Okla. 364, 40 P. 2d 643; Skelly Oil Co. v. Rose, 176 Okla. 313, 55 P. 2d 1019; Atlantic Refining Co. v. Allen, 185 Okla. 194, 90 P. 2d 659.

The parties do not differ with respect to the applicability of the above rule, but their difference arises over whether the testimony of the medical expert is sufficient to support the finding of the commissioner. It will be observed from the above quotation that the expert gave as his testimony, on direct examination, an opinion that would preclude the plaintiff from recovering, and yet on his cross-examination, when he assumed the correctness of the facts upon which the hypothetical question was based, he said it was possible that plaintiff's cross-eyed condition resulted from the injury, and again said that assuming all those facts, including a normal vision before and impaired vision since, "one would naturally think it had something to do with it."

Thus the problem before us is to determine whether the evidence as a whole, including the testimony of this medical expert, makes out a bare cause of possibility or goes beyond and makes the situation one of probability, that is, probable causal connection. The case of Burton v. Holden & Martin et al., 112 Vt. 17, 20 A. 2d 99, appearing in 135 A.L.R. 512, with an annotation commencing at page 516, deals at length with the sufficiency of expert testimony in weighing evidence of cause and effect. It was held there that a possible cause cannot be accepted as the operating cause unless the evidence excludes all other causes or shows something in direct connection with the occurrence. The court further said that to establish

a causal relation there must be created in the mind of the trier of the fact something more than a possible suspicion or surmise that such was the cause of the condition complained of. This decision is in keeping with an abundance of well-reasoned authority, and we think the award of the commission is in keeping therewith.

When it is considered that claimant established the accidental injury conclusively, proved by medical experts, as well as lay experts, an objective, abnormal physical condition after the injury, and proved conclusively by the medical expert that she is at present cross-eyed, it seems to us that the opinion given in answer to the hypothetical question completely overcomes the earlier opinion given. It is entirely reasonable that such an expert might not expect such a condition from such an injury and could so state, but it is also entirely reasonable for him to say, when confronted with a hypothetical case, that it was but natural to think that the injury had something to do with claimant's condition. This was the situation in Skelly Oil Co. v. Collins, 181 Okla. 428, 74 P. 2d 619, where the physician testified that he would not expect to find a condition like the one complained of as the result of a fall, but that examination had eliminated all other likely causes for claimants' condition, and he was therefore forced to conclude that the fall had caused the condition.

The award of the commission is affirmed.

CORN, C.J., GIBSON, V.C.J., and RILEY, WELCH, and HURST, JJ., concur.