482 P.2d 81

**Bill WILSON, Claimant-Appellant,**

v.

**CARL GILB, INC., and Argonaut Insurance
Company, Defendants-Respondents.**

No. 10609.

Supreme Court of Idaho.

March 3, 1971.

May, May & Bennett, and Jay D. Sudweeks, Twin Falls, for claimant-appellant.

John Barrett of Moffatt, Thomas, Barrett & Blanton, Boise, for defendants-respondents.

SPEAR, Justice.

At about 3:30 p. m. on September 11, 1968 appellant claims to have suffered an injury to his back while shoveling dirt for his employer. He did not believe that the injury was serious so he continued to work for the remainder of the day. The next morning appellant was experiencing pain in his back so he reported the injury to his employer. The employer sent him to see Dr. Hoss who examined him and, after administering medication, told him he could go back to work. Feeling that he needed more medical attention, appellant consulted Dr. Burton who hospitalized him for five days. Later he consulted Dr. Shaw who admitted him to the hospital and performed a laminectomy on his back.

Appellant petitioned for a hearing, after which the Industrial Accident Board entered findings of fact and conclusions of law adverse to the claim presented. The Board found that no accident occurred within the meaning of the Idaho Workmen's Compensation statute [1], that the condition continued from a pre-existing injury, and that even if it were assumed that an accident did occur there was no causal connection between the accident and the condition for which appellant sought compensation.

Appellant asserts that the Board erred in the above conclusions. Also, appellant contends that the Board committed error by not awarding him reimbursement for

1. I.C. 72–201

\* \* \* \* \*

" 'Accident,' as used in this law, means an unexpected, undesigned, and unlooked for mishap, or untoward event, happening suddenly and connected with the industry

in which it occurs, and which can be definitely located as to time when and place where it occurred, causing an injury, as defined in this law."

\* \* \* \* \*

medical expenses incurred with Dr. Burton and Dr. Shaw and for failing to apportion the compensation between the pre-existing injury or condition and the injury due to the accident.

The evidence adduced showed that in 1966, prior to the alleged injury that is the subject of this claim, appellant suffered a back injury in an automobile accident. Dr. Kiefer treated the appellant for the earlier injury and last saw him in April, 1968, finding him in good enough condition to return to work.

Appellant did return to work and worked for another employer for a few weeks prior to his employment with Carl Gilb, Inc.

From this evidence of his prior good health and his present injury, appellant argues and cites authority for the proposition that the exact cause of the accident need not be shown when, immediately prior to the accident, he suffered no physical defect. Additionally, he contends that since his was the only evidence presented regarding the issue of whether an accident happened, there was no conflict in the evidence and the Board should have granted compensation.

■ For the Board to have awarded compensation, claimant must have shown that there was an accident, arising out of and in the course of his employment, that *caused* his injury. I.C. §§ 72–201, 72–1013; Tipton v. Jansson, 91 Idaho 904, 435 P.2d 244 (1967); Bradshaw v. Bench Sewer District, 90 Idaho 557, 414 P.2d 661 (1966). Although there may have been no direct evidence presented by respondent showing that no accident happened, there is sufficient evidence to support the Board's conclusion that there was no accident. Appellant testified that he struck a piece of wood with his shovel which caused his injury and that he complained to a co-worker, but the co-worker testified only that appellant complained that his back was sore. Additionally, the co-worker testified that he saw no accident.

■ The testimony of Dr. Shaw and Dr. Burton's records are most significant regarding the cause of the injury to appellant's back. Dr. Burton's records disclose that in May, 1968, appellant came to his office complaining of pain in his back as well as other complications. After having been apprised of his complaints of continuing pain from his first injury as late as May, 1968, Dr. Shaw testified as follows:

"Q Yes. Doctor, let me ask you this. In regards to protruded discs, and I realize there's a difference in some philosophy on this with orthopedic surgeons, but isn't it true, Doctor, your basic philosophy on protruded discs is that a man can have a protruded disc and actually the symptomatology to himself will not show up severely in some instances for a matter of weeks or even months such as the Jerry Teal case?

"A He can have a degenerated disc, yes, with very little actual signs and symptoms as regards to this nerve root pressure this is certainly true and these can come and go and fluctuate over a period of weeks, months or even years before they finally come to the severity where they need surgery.

"Q Even without trauma?

"A Yes, sir. I have many patients who will wake up in the morning and there it is.

"Q And with this case you did go into surgery as previously related, you found degeneration?

"A Yes, sir.

"Q So it's not inconsistent at all with your basic philosophy, is it, Doctor?

"A No, sir.

"Q And so, Doctor, do I conclude as to whether this incident in September was the cause for needed surgery, or whether it pre-existed, it is a medical possibility or speculation based

upon all of the facts which you have before you?

"A  I don't quite understand the question.

"Q  Would you be able to state it with any more than a possibility considering all of the evidence that's placed before you as when this took place?

"A  No, sir, I couldn't specifically state, I don't believe, exactly when all this began.

"Q  Then you consider the additional evidence which I have given you, is that right?

"A  Yes, sir,

"Q  If you took the history that he was getting along very well and then in September he was shoveling and had a severe acute pain and that was it, there is no problem pinpointing it, is there?

"A  No, sir.

"Q  You get into the problem when you find out the prior and additional evidence which has now been related to you, is that right?

"A  Yes, sir." (Tr. 109–111)

From the testimony given by appellant's co-worker and Dr. Shaw and Dr. Burton's records, we conclude that the Board's finding that there was no accident is amply supported by the evidence. Furthermore, such evidence also supports the Board's Conclusion No. II:

"II

"It is the Board's conclusion that in no event, even if it can be said that an accident occurred, that there is any casual [sic] relationship between the alleged accident of September 11, 1968, and the condition ensuing thereafter with the requisite medical probability or reasonable degree of medical certainty; in this regard, it is the conclusion of the Board that the claimant has not sustained his burden of proving that an alleged accident was the cause or the condition ensuing thereafter causing disability and need for medical treatment; the Board in this regard concludes that the most that can be stated on the record and the evidence contained therein is that with speculation, or with a medical possibility the alleged accident contributed to the need for surgery and resultant disability, and the Board recognizes that such proof is not sufficient under the Workmen's Compensation Laws of the State of Idaho."

■  We have reviewed the record and evidence in this case and find no error. In appeals to this court in cases brought under the workmen's compensation statutes, this court is limited in its study to questions of law.  I.C. §§ 72–608, 72–609; Bradshaw v. Bench Sewer District, supra; Bennett v. Bunker Hill Co., 88 Idaho 300, 399 P.2d 270 (1965); Duerock v. Acarregui, 87 Idaho 24, 390 P.2d 55 (1964). Given this standard of judicial review in these types of cases, we conclude that there is ample evidence to sustain the Board's decision.

Since whether an alleged accident has contributed anything to an existing condition is a question of fact, the above-quoted evidence fully supports the Board's failure to apportion compensation on the basis of existing and alleged newly sustained injuries.

The above discussion renders consideration of appellant's other assignments of error unnecessary.

Decision of the Industrial Accident Board denying compensation, affirmed.

Costs to respondents.

McQUADE, C. J., and McFADDEN, DONALDSON and SHEPARD, JJ., concur.