605 P.2d 939

Donald D. SYKES, Claimant-Appellant,

v.

C. P. CLARE AND COMPANY,
Employer,

and

Liberty Mutual Insurance Company,
Surety, Defendants-Respondents.

No. 12610.

Supreme Court of Idaho.

Jan. 8, 1980.

Rehearing Denied Feb. 15, 1980.

J. Ray Cox, Coeur d'Alene, for claimant-appellant.

Gardner W. Skinner, Jr. and William L. Mauk of Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, for defendants-respondents.

DONALDSON, Chief Justice.

This appeal involves a claim for benefits under Idaho's Workmen's Compensation Laws. At issue is the entitlement of claimant-appellant, Donald D. Sykes (Sykes), to total temporary disability payments for a period of approximately one year and eight months from Liberty Mutual Insurance Co. (Liberty Mutual). A referee of the Industrial Commission heard this case in March of 1977 and issued his findings of fact and conclusions of law to the effect that Sykes was not entitled to benefits for the period extending beyond November 6, 1973. The Industrial Commission affirmed the referee's findings and conclusions in April, 1977. Sykes then brought this appeal. We affirm.

On July 26, 1972, Donald Sykes, while working at the C. P. Clare and Company, caught the heel of his shoe on a nail protruding from a step, fell down a flight of stairs and sustained a back injury. He was

taken by ambulance to a hospital in Coeur d'Alene. After X–rays, an attending physician told Sykes that he had a torn, strained muscle and ligament, prescribed a muscle relaxant and told him to stay off his feet for a couple of weeks. Within two weeks of the accident, Sykes consulted a chiropractor in Coeur d'Alene for heat and massage treatments to his back, which treatments continued for the next several months.

Despite these treatments the pain in Sykes' back grew worse. Sykes' chiropractor therefore referred him to an orthopedic specialist, Dr. Bagby. Dr. Bagby conducted numerous tests and examinations of Sykes, and consulted with a Dr. Vincent, a neurosurgeon, about Sykes' problem. In April, 1973 Dr. Vincent took over treatment of Sykes. At that time Dr. Vincent indicated in a letter to Sykes, dated April 27, 1973, that there was definite evidence that Sykes had a ruptured disc in his back. However, Dr. Vincent preferred physical therapy in the form of heat and massage rather than surgery at that time in the hope that there would be some improvement within a few weeks.

In the meantime, financial difficulty caused Sykes and his family, to move to Mesa, Arizona where they resided for approximately five months with his parents. Once in Arizona, Sykes made arrangements with a chiropractor to receive heat and massage treatments as Dr. Vincent had recommended. At the conclusion of the treatments, Sykes received no further medical attention in Arizona. The reasons for this are in dispute. It is undisputed, however, that from the date of the accident until September, 1973, Liberty Mutual had paid Sykes both total temporary disability payments and some medical payments for his work-related injury.

Sykes testified that during the time he was receiving therapy in Arizona, his chiropractor notified him that the surety, Liberty Mutual, refused to pay the bill for therapy. Sykes then contacted Liberty Mutual's Phoenix office which informed him that they would not pay for chiropractic treatment but that they would pay for an operation. As a result Sykes discontinued his therapy, having no funds with which to obtain further medical care. He returned to Idaho in late August of 1973. He continued receiving compensation from Liberty Mutual for his injury until September 27, 1973, at which time for reasons which are unclear from the record, Liberty Mutual terminated his compensation without notice. Liberty Mutual admits Sykes' disability to that date and does not dispute his eligibility for those benefits.

Sykes testified that at this point he contacted Liberty Mutual in Salt Lake City. Liberty Mutual informed him that because he had stopped seeing a doctor, Liberty Mutual had terminated his payments. Sykes then explained the events as they transpired in Arizona. He told Liberty Mutual that he had stopped seeing a doctor both because of the surety's refusal to pay for his physical therapy and his inability to pay any medical bills. When he told Liberty Mutual that he was attempting to get an appointment with Dr. Vincent in Idaho, Liberty Mutual assured him that they would start sending his checks again. Liberty Mutual never resumed compensation.

Apparently in connection with these phone conversations, Dr. Vincent, on October 16, 1973, wrote to Liberty Mutual. In that letter Dr. Vincent stated that he would not suggest any further treatment for Sykes. It was his feeling that Sykes' failure to return to his office since April of 1973 substantiated his opinion that the injury was not severe enough to call for further treatment. Sykes did not receive a copy of Dr. Vincent's letter of October 16, sent to Liberty Mutual.

Sykes did see Dr. Vincent on November 6, 1973. Sykes testified that he informed Dr. Vincent at that time that his condition was getting worse, and he requested surgery. Dr. Vincent declined to operate out of concern that the operation would worsen the condition of the back. Dr. Vincent suggested that Sykes lose some weight. Otherwise, as indicated in his letter to Liberty Mutual after his re-examination of Sykes, Dr. Vin-

cent discharged Sykes from his care; although, he noted that Sykes might want to see the orthopedic specialist, Dr. Bagby. Sykes also did not receive a copy of the November 6 letter which indicated that he had been discharged from Dr. Vincent's care.

After November 1973 until March 1975, Sykes did not attempt to obtain further medical treatment. In March 1975, at the request of the Social Security Administration, Dr. William Slaughter examined Sykes. As a result of that examination the Social Security Administration concluded that Sykes' condition had stabilized. In July of 1975, the Social Security Administration terminated Sykes' social security disability payments. At this point Sykes reopened his claim for workmen's compensation from Liberty Mutual.

By agreement of the parties, Dr. Vincent again examined Sykes on September 22, 1975. On that same day Dr. Vincent wrote a letter to counsel for Liberty Mutual. That letter indicated that Sykes was still obese and unable to return to any gainful occupation; that there was still evidence of a disc rupture, but that Sykes' condition was quite improved since the last time Dr. Vincent had seen him in November 1973; and that the claimant has a permanent partial disability of 10% of the whole man as a result of the July 1972 accident.

Sykes then filed an application for a hearing before the Idaho Industrial Commission contending that he was entitled to compensation from the time that Liberty Mutual terminated his payments on September 27, 1973 until at least July 1, 1975, by reason of his total disability during that period of time.

The hearings referee found that Sykes' total temporary disability did not extend beyond November 6, 1973. He noted that while Dr. Vincent's report of September 1975 indicated that there was some improvement in the claimant's condition in the interim, there was no medical opinion that Sykes was totally disabled after November 6, 1973. The fact that Dr. Vincent discharged the claimant from his care on November 6 indicated to the referee that Dr. Vincent did not consider Sykes to be totally disabled. In addition the claimant did not obtain medical treatment in the interim period until he began consulting Dr. Vincent in September 1975. The referee concluded as a matter of law that it was the claimant's burden to present expert medical evidence of the extent and duration of disability in order to recover income benefits for disability. This, the referee concluded, Sykes failed to do. He therefore denied Sykes benefits for the period subsequent to November 6, 1973.

We limit the scope of our review in this type of case to questions of law and determinations of whether the findings of fact in the record are supported by substantial, competent evidence. I.C. § 72–724(2); I.C. § 72–732(1); *Paulson v. Idaho Forest Industries, Inc.,* 99 Idaho 896, 591 P.2d 143 (1979); *Madron v. Green Giant Co.,* 94 Idaho 747, 497 P.2d 1048 (1972).

■ In workmen's compensation cases, the burden is on the claimant to present expert medical opinion evidence of the extent and duration of the disability in order to recover income benefits for such disability.

■ At his hearing before the Idaho Industrial Commission, Sykes failed to present any physicians to testify on his behalf as to the extent and duration of his total temporary disability. There were admitted into evidence, as exhibits for the commission, a physician's report by Dr. Geisen, employer's designated physician, a copy of Dr. Vincent's letter of April 27, 1973 to Sykes while Sykes was in Arizona, and a letter from Dr. Vincent to Liberty Mutual's claims adjuster. Sykes testified as to statements made to him by his doctors indicating his physical impairment, but did not support his testimony with doctor's reports, depositions or a physician's oral testimony. His testimony does not constitute medical testimony which is necessary to support his claim for compensation. As a result, he failed to satisfy the burden required in order to establish his eligibility for total temporary disability

benefits. *Wilson v. Carl Gilb, Inc.*, 94 Idaho 106, 482 P.2d 81 (1971).

This Court has held on numerous occasions that, in workmen's compensation cases there must be medical testimony supporting the claim for compensation with a reasonable degree of medical probability. *Bowman v. Twin Falls Const. Co., Inc.*, 99 Idaho 312, 581 P.2d 770 (1978); *Fisher v. Bunker Hill Co.*, 96 Idaho 341, 528 P.2d 903 (1974). Workmen's compensation cases, because of their medical aspects, depend upon knowledge neither expected nor possessed by lay witnesses, and the basis for any award must rest upon and be supported by medical testimony. *Comish v. J. R. Simplot Fertilizer Co.*, 86 Idaho 79, 383 P.2d 333 (1963).

Not only must the award be based upon medical testimony but it is a well-established principle of law that in workmen's compensation cases, the claimant has the burden of proving a compensable disablement in order to recover. *Wilson v. Carl Gilb, Inc., supra; Kern v. Shark*, 94 Idaho 69, 480 P.2d 915 (1971); *Davenport v. Big Tom Breeder Farms, Inc.*, 85 Idaho 604, 382 P.2d 762 (1963). The record here indicates that Sykes called no other witnesses to testify besides himself and no medical opinion testimony was introduced which established his disability and subsequent eligibility to receive total temporary disability payments after November 6, 1973.

■ Furthermore, where the employer or its surety has paid total temporary disability payments and then terminates such payments, as in this case, this Court has held that payments of such compensation prior to termination do not constitute an admission that the employee's subsequent condition was due to a compensable cause which required the employer or surety to prove cessation of the compensable disability. *Carlson v. F. H. DeAtley & Co.*, 55 Idaho 713, 46 P.2d 1089 (1935). The burden of proof thus remains on the claimant, even where the employer or its surety originally paid disability compensation to the employee.

Idaho Code § 72–102(8) defines "disability" for purposes of determining total or partial temporary disability income benefits as "a decrease in wage-earning capacity due to injury or occupational disease, as such capacity is affected by the medical factor of physical impairment, and by nonmedical factors such as age, sex, education, economic and social environment." Sykes did not present evidence to establish the medical factor of impairment or the nonmedical factors which proved that he suffered a disability. We therefore affirm the referee's conclusion that Sykes bore the burden of presenting expert medical evidence to establish his eligibility for total temporary disability benefits and that he failed in so doing.

■ While we find on the basis of the record that there was substantial and competent evidence to support the referee's finding that Sykes' total disability did not extend beyond November 6, 1973, we cannot agree with the referee's mixed finding of fact and conclusion of law that where the claimant is not under the care of a physician, he cannot be considered to be totally disabled.

If we were to accept the referee's finding, it would then be possible for an individual suffering from an impairment for which no marked change or improvement could be expected, and who ceased seeing a doctor because there was no hope of improvement, to be considered not disabled merely because such person discontinued seeing a physician who could do little to improve his patient's condition. Indeed, it is possible that a claimant could present medical testimony at his hearing which would establish his disability, yet said claimant would be denied disability benefits because he was not under the care of a physician at the time such evidence was presented. Whether an individual is disabled is not determined by whether that person is under the care of a physician but by whether that person has suffered a decrease in wage-earning capacity. I.C. § 72–102(8). It was error for the referee to conclude that because Sykes was no longer under the care of a physician he was no longer disabled.

Ordinarily we would remand this case to the referee with instructions to redetermine whether Sykes was disabled without the erroneous conclusion that because Sykes was no longer under the care of a physician, he couldn't be considered disabled. However, it is clear from the record in this case that the referee independently concluded that Sykes failed to establish the extent and duration of his disability through medical opinion evidence and this would mandate the same result. On the basis of this independent conclusion, we affirm the referee's determination that Sykes could not be considered disabled and thus not entitled to total temporary disability benefits for the period in dispute.

Affirmed.

SHEPARD, BAKES and McFADDEN, JJ., concur.

BISTLINE, Justice, dissenting.

It is undisputed, as noted by the majority, that generally the claimant has the burden of showing "the extent and duration of the disability in order to recover." This rule is not an absolute, however. It has been held, for instance, that once the parties enter a compensation agreement paying claimant for total disability, that total disability "is presumed to continue unless and until competent examination and testimony discloses otherwise. The burden of proving that claimant's disability had ceased altogether or had become partial was upon the employer." *Fox v. American News Co.*, 190 Pa.Super. 74, 151 A.2d 670, 671 (1959). *Accord, Workmen's Compensation Appeal Board v. F. W. Woolworth Co.*, 19 Pa.Cmwlth. 413, 338 A.2d 784 (1975). This Court itself has long noted that the burden of proof shifts to the person, whether employer or employee, who seeks to show a change in condition in order to modify an agreement that has been approved by the Industrial Board. *Hadden v. A & P Tea Co.*, 94 Idaho 861, 499 P.2d 560 (1972); *Howard v. Washington Water Power Co.*, 65 Idaho 339, 144 P.2d 210 (1943); *Fackenthall v. Eggers Pole & Supply Co.*, 62 Idaho 46, 108 P.2d 300 (1940); *Boshers v. Payne*, 58 Idaho 109, 70 P.2d 391 (1937).

Similarly, it has been held that where it is admitted that claimant suffered an injury covered by workmen's compensation, but the employer thereafter seeks to avoid payment "on the ground that disability had ceased, and that the continued disability of respondent was the result of disease, the burden of proving such change is" on the employer-insurer. *Employers' Liability Assurance Corp. v. Coffman*, 147 Okl. 227, 296 P. 395, 395 (1931). *Accord, Channing v. Payton*, 152 Okl. 153, 4 P.2d 1 (1931). In *Channing*, claimant sought a presumption as follows: "that, the employer and insurance carrier having once admitted that claimant suffered such accidental injury as to entitle him to compensation, and having paid such compensation for the time mentioned [from September 13th to January], the presumption would arise that any pain existing in the region of the original injury was due to such injury . . . ." 4 P.2d at 2. The court adopted that presumption as follows:

"While no case has been called to our attention holding that such presumption as contended for by claimant is indulged, we are constrained to hold that such presumption would be reasonable and proper. For a certain physical condition admitted to exist and admitted to be attributable to a certain accidental injury ought not to be said to be attributable to any other cause because the condition continues longer than would ordinarily be expected from the nature of the injury, unless there is evidence reasonably tending to establish such other cause."

*Id.* at 3. The only admission of liability in *Channing* consisted of reporting the injury to the Commission, making the payments, and submitting a stipulation and agreement to the Commission which was rejected. Similarly, the court in *Coffman* held as follows:

"We are of the opinion that, the injury being admitted and the same being a compensable injury, the burden of proof was on petitioners to prove that the disability caused by the injury had ceased,

and that the disability respondent is now suffering resulted from disease. To announce any other rule would require the claimant to retry his case every time the insurance carrier stopped compensation. In this case the injury was admitted." 296 P. at 396. The insurance company in that case originally admitted that the injury disabled claimant but after discontinuing payments argued before the Commission that the burden of proof was on the claimant.

This Court departed from the general rule that the claimant bears the burden of showing that he or she is still in the recovery period in the recent case of *Paulson v. Idaho Forest Industries, Inc.*, 99 Idaho 896, 591 P.2d 143 (1979). In *Paulson*, this Court held that an injured employee's work-related hysterical neurosis was covered under the Workmen's Compensation statutes and ordered the employer and its surety to provide medical treatment for the mental condition. In *Paulson*, we departed from a mechanical application of the proposition that the claimant usually bears the burden of showing that he is still in a recovery period. Instead, there was evidence showing that the surety had been on notice for some time that the claimant might need treatment for his condition, that Paulson himself did not realize the need for such care, and that the surety had neither provided the treatment nor advised the claimant of its necessity. Under these conditions we deemed it appropriate to presume that medical treatment would improve the employee's mental condition and so ordered the employer and its surety to pay for these services.

The issue to my mind thus becomes whether under the facts of this case Sykes should have the burden of showing that his temporary total disability continued over the time period in question, or whether that burden should shift to the respondents. In making this analysis, I do not advocate that the burden of proof be allocated on a case-by-case basis; rather the question is whether this case is within that small class of cases where the burden of proof should be on the employer-surety.

The facts of this case show the following: Sykes never received notice of being discharged from Dr. Vincent's care on November 6, 1973, either orally or by means of written correspondence. However, Liberty Mutual did receive such correspondence in the November 6th letter. Yet Liberty Mutual at no time informed Sykes that he was discharged from a physician's care, and Liberty Mutual failed to furnish Sykes with any written correspondence relating to his condition. It also failed to request Sykes to present himself to a physician for a rating of his disability. Thus Sykes was unaware that he had been discharged from Dr. Vincent's care, and that he had a duty to present himself to a doctor on his own initiative for another physical exam if he was to be able to continue to prove his disability. Given these facts, I do not understand just how Sykes on his own was to know that he had to establish a record that would enable him to prove his case way down the road when he would be subsequently subjected to the burden of proving his disability during the period in question.

Liberty Mutual, on the other hand, faced no such problems. Liberty Mutual had received Dr. Vincent's letter, and it knew that it had decided that Sykes was no longer entitled to payments. Under the Idaho Workmen's Compensation statutes, Liberty Mutual had the means to acquire and produce the medical evidence needed to prove that the employee was no longer disabled.[1]

---

1. I.C. § 72–432(8), adopted in 1978, and hence inapplicable here, will also provide the employer with a further opportunity to acquire medical evidence to disprove an employee's disability by providing that:

   "All medical information relevant to or bearing upon a particular injury or occupational disease shall be provided to the employer, surety, claimant or commission without liability on the part of the physician, hospital or other provider of medical services and information developed in connection with treatment or examination for an injury or disease for which compensation is sought shall not be privileged communication."

   Essentially, the employer has access to all relevant medical records and reports of an injured employee which relate to the question of whether a disability exists.

Idaho Code § 72–433(1) provides, in relevant part, that "[a]fter an injury or contraction of an occupational disease and during the period of disability the employee, if requested by the employer or ordered by the commission, shall submit himself for examination at reasonable times and places to a duly qualified physician or surgeon." In effect, this provision enables the employer to disprove the existence of a total disability by requiring the employee to submit to a physical examination conducted by an employer-designated physician. While the statute permits the employee to select and have present his own physician at an examination conducted by an employer-selected physician, I.C. § 72–433(2) also provides that the selection of a physician by an employee "shall not be construed to deny the employer's designated physician or surgeon the right to visit the injured employee during reasonable times and under all reasonable conditions during disability." Thus, the employer may not only require the employee to submit to a physical examination to determine the extent and duration of an alleged disability but, should the employee decide to select his own physician, the employer-designated physician is neither barred from visiting with the injured employee nor from determining whether a disability exists.

Given the ability of the insurance company to determine and prove whether the claimant is still totally disabled, and given that the injured employee usually has at his disposal neither the economic resources nor the vast body of informational data that an employer or its surety has, it would be unduly burdensome and inequitable to place the burden of proving disability upon the injured employee where the surety has not notified the employee that it no longer considers him to be disabled. Indeed, to compel the claimant in this case to bear the costs of obtaining expert medical testimony to prove the existence of his total disability would be burdensome, unjust, and inequitable. The record reveals that claimant, during the period of his disability, had to move in with his parents because of financial difficulties and had to discontinue medical and chiropractic services because of his inability to pay for such services.

This conclusion that the burden should rest on the employer where no notice is given to the employee is buttressed by legislative acknowledgment of the disparate disposition of Sykes' claim. I.C. § 72–806, which was adopted in 1978, provides:

"A workman shall receive written notice within fifteen (15) days of any change of status or condition including, but not limited to, the denial, reduction or cessation of medical and/or monetary compensation benefits, which directly or indirectly affects the level of compensation benefits to which he might presently or ultimately be entitled. If any change in compensation benefits is based upon a medical report or medical reports from any physician or any other practitioner of the healing arts, a copy of such report shall be attached to the written notice which the workman shall receive. The industrial commission shall by rule and regulation, determine by whom the notice shall be given and the form for such notice. In the absence of a rule governing a particular situation, the employer's insurer, or in the case of self-insurers, the employer, shall be responsible for giving the notice required herein."

Under this section, in all future cases where notice is not given, at the least the burden of proof should rest on the employer-surety. Only in this manner can the obvious purpose of this section, to provide the claimant with a proper opportunity to challenge the employer-surety's action and establish his case, be accomplished. I can see no reason whatever for our not applying to this case the equitable justifications which obviously moved the legislature to intervene on behalf of claimants. Moreover, this provision should be expanded *to require that any and all correspondence as to the claimant's condition should be furnished to the claimant.*

The majority's reliance on the rule of law that a claimant has the burden of proving

the extent and duration of his disability, as has been noted, is not an absolute. Here the surety paid total temporary disability payments for over a year before terminating such payments. The payments simply stopped; no explanation was offered to Sykes. Had Sykes been notified that his status was considered changed, and that it was up to him to prove that his disability continued, I could accept the majority's opinion. Such, however, is not the case, and Sykes, the most interested party, was completely left in the dark, only to be informed thereafter that he should have been protecting himself.

The majority cites *Carlson v. F. H. DeAtley & Co.*, 55 Idaho 713, 46 P.2d 1089 (1935), for the proposition that payments of compensation prior to termination do not constitute an admission that the employee's subsequent condition was due to a compensable cause which required the employer or surety to prove cessation of the compensable disability. In *Carlson* the issue was whether the injury was caused by the original accident and subsequent operation; here the question is whether the total disability continued. This Court in *Carlson* specifically distinguished those cases where acknowledgment of liability shifted the burden of proof to the employer by noting that in *Carlson* there was no admission at all that the present disability was caused by the accident or the operation. In the present case, finding of fact IX stated that the defendants admitted claimant's disability to September 27, 1973, and that they do not dispute his eligibility for those benefits.

Moreover, I do not see the issue here to be whether or not respondents have "admitted" liability. Rather, the issue is whether they should assume the burden of proof where they unilaterally agreed to discontinue payments without notifying claimant of the reason. The payments, even if not per se admissions, led the claimant to believe his claim was compensable. It was then up to the employer-surety to notify him to the contrary or shoulder the burden of proof when the continuation of his disability was placed in issue.

Under these circumstances I would hold that an employer or its surety may not, by withholding information from a claimant that he would need in order to prepare a proper record of his case, subsequently defeat an injured employee's claim for compensation by maintaining that the claimant must bear the heavy burden of proving that the disability still existed. The employer rightfully should bear the burden of producing medical evidence which disproves the existence of an employee's disability where payments were made for over a year and then stopped without any explanation being given to the employee.

The question which the Court should properly decide today is whether the employer met this burden so as to justify its termination of payment of total disability benefits to the claimant. In the instant case, Sykes established and the referee concluded as a matter of law that he was totally disabled up until November 6, 1973. Sykes also testified that he was totally disabled up until July 1, 1975. However, there was no medical opinion introduced into evidence which would suggest that Sykes was or was not disabled after November 6, 1973. It is also undisputed that Liberty Mutual made total temporary disability payments to Sykes until September 27, 1973. Since the burden of proof should lie on Liberty Mutual to prove that the disability had ceased, it was encumbent upon Liberty Mutual to produce evidence that Sykes was not totally disabled after November 6, 1973. In the absence of such evidence, the Industrial Commission erred in denying Sykes' temporary total disability benefits from November 6, 1973 to July 1, 1975. At best, the order of the Industrial Commission approving and confirming the referee's findings of fact and conclusions of law should be reversed with directions to enter a determination in favor of Sykes. At worst, there should be a reversal with the right in the parties to relitigate the issue of continuing disability—the final determination to be made with a proper allocation of the burden of proof.